IN THE MATTER OF STEVEN RANDALL STOKES

No. 7510DC924

(Filed 5 May 1976)

**1. Infants § 10— delinquent child — age of child sufficiently shown**

In a hearing upon a petition alleging that respondent was a delinquent child in that he murdered a named person, evidence was sufficient to show that respondent was a child less than sixteen years of age where such evidence consisted of a prior order of the juvenile court, dated 18 months prior to the present hearing, which stated that defendant was at that time twelve years of age.

**2. Infants § 10— delinquent child — murder — possession of intent to commit**

Even if the presumption that a person between the ages of seven and fourteen is rebuttably presumed incapable of committing a criminal offense is relevant to proceedings in the juvenile court, there was ample evidence in this proceeding from which the trier of facts could find that respondent possessed the required intent to commit the murder alleged.

**3. Infants § 10— delinquent child — murder in perpetration of robbery — sufficiency of evidence**

In a hearing upon a petition alleging that respondent was a delinquent child in that he murdered a named person, evidence was sufficient to show respondent's participation in the murder where such evidence tended to show that the victim was killed during the course of a robbery in which respondent was an active participant.

**4. Criminal Law § 75— juvenile respondent — statements to officers — admissibility**

Written and oral statements made by respondent to police officers were admissible where they were made understandingly, freely, voluntarily, and without coercion or intimidation, and where respondent's parents were present throughout the questioning.

APPEAL by juvenile respondent from *Bason, Judge.* Order entered 15 September 1975 in District Court, WAKE County. Heard in the Court of Appeals 9 March 1976.

On 6 August 1975, a juvenile petition was filed alleging that respondent "is a delinquent child as defined by G.S. 7A-278(2) in that at and in the county named above and on or about the 5th day of August 1975, the child did unlawfully, wilfully and feloniously and of his malice aforethought kill and murder Euphie D. Adams. In violation of G.S. 14-17."

After the hearing on the petition, the court entered an order wherein it found facts and concluded that respondent had committed the act alleged in the petition and was a delinquent child. The court also entered an order placing respondent in the custody of the Department of Human Resources, Division of Youth Services for an indefinite period of time not to extend beyond his 18th birthday. Respondent, through court appointed counsel, gave notice of appeal.

*Attorney General Edmisten, by Assistant Attorney General William Woodward Webb, for the State.*

*Tharrington, Smith & Hargrove, by Roger W. Smith, for respondent appellant.*

VAUGHN, Judge.

Counsel for respondent appellant has appropriately grouped his four assignments of error into two arguments.

The first argument goes to the sufficiency of the evidence to support the court's finding that respondent is a delinquent child.

The State offered evidence tending to show the following:

On 6 August 1975, at about 10:00 a.m., the body of Mrs. Euphie Adams was found in the yard of her home on Six Forks Road. The Medical Examiner was called to the scene and determined that Mrs. Adams had been dead about ten or twelve hours. At the time of her death, Mrs. Adams was 80 years old and weighed 118 pounds. She had been badly beaten about the head, neck and chest. Her injuries included fractures of the left mandible, the left hyoid bone and thirteen ribs. There had been considerable bleeding from wounds on her head.

The investigating officers found a six cell flashlight near a storm drain. Some ashes and a piece of burned wood were found in the storm drain. The flashlight was bent. There was blood

---

In re Stokes

---

on the flashlight. Blood taken from the body of Mrs. Adams and that taken from the flashlight were of blood group "O."

During the afternoon of the day of the killing, investigating officers went to the home where respondent, a 13-year-old boy, lived. Respondent's parents and several of his brothers and sisters were present. Respondent, his brothers and sisters were informed that they were going to be charged with murder in connection with Mrs. Adams' death.

In the light most favorable to the State, respondent gave the officers the following account of the events surrounding the killing.

He, his sisters Linda and Kathy and his brother Tim decided to go to Mrs. Adams' home on the pretext of asking her for flowers but for the real purpose of robbing her. Respondent carried a sheet and flashlight. When they arrived, respondent asked Mrs. Adams for some flowers. He and his sister, Linda, got Mrs. Adams to the side of her house and respondent's brother, Tim, threw the sheet over Mrs. Adams. After the robbery they burned the sheet. Several of the children returned home. Later, respondent's sister, Kathy, told them that she had killed Mrs. Adams. Respondent told the officers that he and the others took a rifle, some money and a check from the Adams' home. A ten dollar bill was recovered from under a couch cushion in respondent's home. A United States Government check was also discovered in the home.

[1] Respondent first argues that there is no evidence that respondent is a "child" less than sixteen years of age. During that part of the hearing devoted to the admissibility of certain statements made by respondent, a prior order of the juvenile court adjudging that respondent was a delinquent was introduced by respondent. That order, dated 13 March 1974, determined that respondent, on that date, was 12 years of age. Moreover, the juvenile court can take judicial notice of its own records to determine whether it has jurisdiction over the alleged delinquent.

[2] Respondent next argues that, if there was evidence that respondent was 13 years of age, there was no evidence that respondent was capable of forming the mental intent to commit the criminal offense alleged. Citing *State v. Yeargan,* 117 N.C. 706, 23 S.E. 153 and other cases involving criminal prosecutions, he argues that a person between the ages of seven and

fourteen years of age is rebuttably presumed incapable of committing a criminal offense. Even if we assume that the statements found in those cases, involving the prosecution of children in the criminal courts, are relevant to proceedings in the juvenile court, there is ample evidence in the case before us from which the trier of the facts could find the required intent.

[3]  Respondent's final point in his first argument goes to the alleged insufficiency of the evidence to show his participation in the murder.

We have already set out our summary of the evidence adduced at the juvenile hearing. That evidence is sufficient to support the inferences that Mrs. Adams was killed in the course of a robbery, in which respondent was an active participant, and supports the finding of the trial judge.

[4]  Respondent's remaining assignments of error are grouped in his argument concerning the admissibility of written and oral statements made by him.

The "totality" of the circumstances under which the statements were made are disclosed by the judge's recital of his findings:

"On the morning of August 6, 1975, between 9:00 a.m. and 10:00 a.m., Raleigh Police Detectives Brinson and Pratt went to the residence of Mrs. Euphie D. Adams, Six Forks Road, Raleigh, where they found the body of Mrs. Adams lying on the ground approximately ten feet from her house. The house was approximately one hundred feet from the road.

Subsequently that day Detective Brinson was at the home of the respondent, Steven Randall Stokes, on two occasions. On the first occasion, between 1:00 p.m. and 3:00 p.m., the detective saw the respondent's mother and father and some brothers and sisters. The detective had no conversation with the respondent at that time.

Several hours later, Detective Brinson was at the Stokes' residence again where the detective saw the respondent along with his mother, two older brothers, and an older sister. Raleigh Police Detective Keeter and Sergeant R. D. Williams were also there.

At this time Detective Brinson learned the identity of the respondent, his brother Timothy, and sister Linda and informed them in the presence of their mother that they were going to be charged with murder in connection with the death of Mrs. Adams.

Detective Brinson then took the respondent with his brother Timothy and his sister Linda to the Raleigh Police Department.

The respondent and his brother Timothy were taken upstairs to the Juvenile Division while the sister Linda was taken downstairs to the area for adults.

On *voir dire* relating to the admissibility of statements made by the respondent, the Court finds the following facts:

At the Juvenile Division of the Raleigh Police Department, the respondent was placed in a small room alone, behind a closed door, and was asked no questions until his parents arrived. On the arrival of the respondent's parents, approximately forty-five minutes or one hour later, they joined the respondent in the small room for questioning along with Detectives Brinson and Keeter.

Meanwhile, respondent's older brother Timothy was in another small room, separated from the respondent's room by a central room having two-way mirrors permitting both boys to be viewed from the central room.

At the time of this questioning of the respondent, both of his parents were present. The respondent had not been previously questioned.

Before this questioning began, Detective Brinson advised the respondent and his parents that he would have to advise them of their rights and that they must understand these rights.

The detective gave the respondent and his parents a written copy of the statement of rights that included a waiver of rights and asked them to listen carefully and to read along with him while he read from the written statement. The detective placed the respondent in a position where he could read along with the detective.

The detective read the complete page which was as follows:

## YOUR RIGHTS

Before we ask you any questions, you must understand your rights.

You have the right to remain silent and not make any statement.

Anything you say can and will be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him or anyone else with you during questioning.

If you cannot afford a lawyer, one will be appointed for you by the Court before questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

## WAIVER OF RIGHTS

I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me, and no pressure or coercion of any kind has been used against me by anyone. I have read or had read to me this statement of my rights and the above Waiver of Rights, and I understand what my rights are.

The entire period that the detective spent in explaining the rights and reading the rights was approximately five minutes.

Detective Brinson talked with the parents at that time; they appeared normal, although they were slightly upset.

At the time of the reading of the rights, Detective Brinson did not specifically tell the respondent what a lawyer was. There was no conversation as to whether the respondent had the money to hire a lawyer.

Neither a representative of the Wake County Department of Social Services nor a representative from the District Court was present.

Following the reading of the rights, the detective asked the respondent if he understood his rights and if he would talk to the detective without a lawyer present. The respondent said that he would, giving an affirmative answer, as did his father. That reply was the respondent's only comment. No questions were asked by either the respondent or his parents.

Following the reading of the rights and the reading of the waiver form and following the affirmative answer of the respondent that he would talk to the detective without a lawyer present, respondent and his parents signed the Waiver of Rights. The date and time was August 6, 1975, 5:37 p.m. The signatures were witnessed by Detective Brinson and Keeter.

At the time of the respondent's affirmative answer as to talking without a lawyer, he had been told again of the case that the detective was investigating and that the detective wanted the respondent to talk to him about that case.

All of the foregoing *voir dire* findings were made from the examination of the witness, Brinson. The respondent did not testify or offer evidence on *voir dire* except to place into evidence a portion of the respondent's Juvenile Court file consisting of an Adjudicatory Order and a Dispositional Order dated March 13, 1974, wherein respondent was found to be delinquent and placed in the custody of the Wake County Department of Social Services. The Adjudicatory Order included a finding by the Court that as of March 13, 1974, the respondent was twelve years of age. It is from that 1974 finding of the Court that the Court now finds the respondent to be thirteen years of age at the time of his interrogation on August 6, 1975, and within the jurisdiction of the court at this juvenile hearing. There was no testimony as to the respondent's age in the evidence of the petitioner.

At the conclusion of the questions and argument on *voir dire,* the Court determined that the respondent freely, understandingly, voluntarily, and intelligently answered

questions for Detective Brinson beginning at 5:37 p.m. on August 6, 1975, without undue influence, coercion or duress, and without any promise, threat, reward, or hope of reward; that the respondent had been fully advised of his constitutional rights and understood his rights; that after being advised of his rights, he knowingly and intelligently waived his rights to counsel at the time of interrogation, making a statement to Detective Brinson.

It was therefore adjudged that the respondent's answer and statement to Detective Brinson are competent and can be admitted into evidence."

The judge made similar findings in connection with a written statement by respondent on the same day.

We have set the judge's findings out in detail. On their face, we hold that they refute respondent's contention that the juvenile's statements were inadmissible because:

"They were not made voluntarily and with understanding because (A) Respondent was not of sufficient age to understand the import of his statements, (B) he was being illegally detained, (C) his legal guardian was not present, (D) he was in circumstances fraught with intimidation, (E) he was not of sufficient intelligence to understand the import of his statements, and (F) he spoke reluctantly."

It is hard to imagine that officers, charged with the duty of identifying the perpetrators of a horrible crime could have done more to insure that any statement made by respondent was made voluntarily and with full understanding of all of his legal rights.

We have carefully reviewed the proceeding in the juvenile court. There, and on this appeal, the juvenile was diligently represented by able counsel. We find no error in the proceedings in the juvenile court. The order of that court is affirmed.

Affirmed.

Chief Judge BROCK and Judge MARTIN concur.