IN THE MATTER OF: YAVONKA BYRD, A MINOR CHILD

No. 8425DC593

(Filed 15 January 1985)

1. **Parent and Child § 1.5; Evidence § 28— termination of parental rights—court file on minor child—admissibility**

In a proceeding to terminate parental rights the trial court did not err in admitting into evidence the court file on the minor child, since a court may take judicial notice of earlier proceedings in the same cause, and, during the hearing, respondents consented to admission of the file.

2. **Parent and Child § 1.6— termination of parental rights—consideration of prior order of neglect—prior order not determinative**

Although a prior order of child neglect is admissible in subsequent proceedings to terminate parental rights, the prior order alone is not determinative on the issue of neglect, and the trial court must make an independent determination of whether neglect authorizing the termination of parental rights existed at the time of the hearing, which determination was made by the court in this case.

3. **Parent and Child § 1.5— termination of parental rights—prior adjudication of neglect—parents' representation by counsel**

The admissibility of prior orders of child neglect in hearings for termination of parental rights is not conditioned on whether the parents were represented by counsel.

4. **Parent and Child § 1.5— termination of parental rights—admissibility of expert testimony**

The trial court did not err in admitting the testimony of certain expert witnesses to the effect that respondents' parental rights should be terminated, since one witness was tendered as an expert in the field of juvenile protective services and in permanency placing of children, and the other testified as an expert in infant development and permanency planning for children; the substance of the testimony was that the child was in need of permanent placement and a stable home environment; the witnesses were unquestionably in a better position than the trial court to have an opinion on the subject; and the testimony undoubtedly aided the court in making its determination.

5. **Parent and Child § 1.6— termination of parental rights—failure to pay costs of child care—parents incarcerated—subsequent exoneration—no intentional misconduct**

 The trial court erred in terminating respondents' parental rights pursuant to G.S. 7A-289.32(4) upon a finding that, while the child was in Department of Social Services custody, the parents had failed to pay a reasonable portion of the cost of the care of the child for a continuous period of six months next preceding the filing of the petition, since both respondents were convicted of manslaughter and were incarcerated for the six months next preceding the filing of the petition; the parents' own misconduct which results in forfeiture of the opportunity to provide for child care ordinarily does not excuse the parents from contributing, but in this case respondents' manslaughter conviction was ultimately reversed; and it therefore could not be said as a matter of law that respondents by their intentional misconduct forfeited the opportunity to contribute toward their child's care.

6. **Parent and Child § 1.6; Attorneys at Law § 5— termination of parental rights —one attorney for both parents—sufficiency of evidence against both parents**

 Respondents in an action to terminate parental rights could not complain that the trial court erred in failing to appoint separate attorneys for each respondent and that the court was predisposed to decide the case for or against respondents as a couple, since respondents failed to make any objection at the time of appointment of counsel; the record contained sufficient competent evidence to terminate the parental rights of both respondents; and there was no indication that the trial court treated respondents as a couple rather than as individuals.

APPEAL by respondents from *Tate, Judge*. Judgment entered 24 August 1983 in District Court, CALDWELL County. Heard in the Court of Appeals 25 October 1984.

This appeal arises from a petition filed on 8 March 1983 by the Caldwell County Department of Social Services (DSS) to terminate the parental rights of respondents Joseph A. Byrd and Sheree S. Byrd in their minor child, Yavonka Byrd. Yavonka was born on 4 November 1978 and first came into the custody of the DSS in December 1978, following unexplained physical injuries which required her hospitalization. On 15 December 1978 the DSS filed a juvenile petition seeking to have Yavonka adjudicated a neglected child, which was allowed on 7 February 1979. Yavonka has remained in DSS custody since December 1978, although she was placed with respondents during the periods from 4 April 1979 to 6 June 1979, and from 13 June 1979 to 27 June 1979, when she was again removed from her parents and hospitalized.

On 21 January 1982, respondents were convicted of manslaughter in connection with the death of their son, JoVon Byrd. The conviction was ultimately reversed, *State v. Byrd*, 60 N.C. App. 624, 300 S.E. 2d 49, *rev'd*, 309 N.C. 132, 305 S.E. 2d 724 (1983), but respondents were incarcerated from the time of their conviction until after the hearing in this matter.

Respondents were, however, present at the hearing, which was held at successive sessions of district court on 6 July, 13 July, 27 July, and 3 August 1983. Based upon evidence offered by the parties at the hearing and upon its review of the court records of Yavonka Byrd, the trial court entered its order terminating respondents' parental rights on 24 August 1983. From this order, respondents appeal.

*Whisnant, Simmons, and Groome, by H. Houston Groome, Jr., and Fred D. Pike, for petitioner appellee.*

*Carroll D. Tuttle for respondent appellants.*

*No brief for guardian ad litem, Beverly T. Beal.*

EAGLES, Judge.

The trial court terminated the parental rights of respondents pursuant to G.S. 7A-289.32(2) and (4). We find that although parental rights were validly terminated pursuant to G.S. 7A-289.32(2), the evidence and findings did not support a termination under G.S. 7A-289.32(4). A valid finding of one of the statutorily enumerated grounds is sufficient to support an order terminating parental rights. *In re Pierce*, 67 N.C. App. 257, 312 S.E. 2d 900 (1984). Accordingly, we affirm.

[1] Respondents first assign error to the admission into evidence of the court file on Yavonka Byrd, particularly of Judge Edward Crotty's 7 February 1979 order adjudicating Yavonka to be a neglected child. As to the court file generally, a court may take judicial notice of earlier proceedings in the same cause. *In re Stokes*, 29 N.C. App. 283, 224 S.E. 2d 300 (1976). *See generally* 1 Stansbury's N.C. Evidence § 13, § 153 (2d rev. ed. 1982) (court records exception to hearsay rule). The court file was properly admitted into evidence. Furthermore, although respondents insist they were somehow prejudiced by its admission, we discern no

prejudice. Finally, it appears from the record that during the hearing, respondents consented to the admission of the file. Counsel for respondents stated in open court that although he objected to any previous orders being considered or adopted by the court, "the Court may certainly take judicial notice of the file."

[2] As to the 7 February 1979 order, a prior adjudication of neglect is admissible in subsequent proceedings to terminate parental rights for neglect. *In re Ballard,* 311 N.C. 708, 319 S.E. 2d 227 (1984). However, respondents contend the trial court failed to consider any evidence of neglect other than that contained in the prior order. Although a prior order of neglect is admissible in subsequent proceedings, the prior order alone is not determinative on the issue of neglect, and the trial court must make an independent determination of whether neglect authorizing the termination of parental rights existed at the time of the hearing. *Ballard, supra.* Contrary to respondents' contention, however, we find that the trial court in fact made an independent determination. The record indicates that Judge Tate expressly recognized the termination hearing to be a "new and separate and independent proceeding," and that he heard evidence, including evidence pertaining to neglect, from both parties. The resulting order reflects that parental rights were terminated for neglect based on both the prior order and on additional evidence adduced at the hearing.

[3] Respondents also argue that the prior order of neglect is not admissible because the parents were not represented by counsel at that time, and cite *In re Norris,* 65 N.C. App. 269, 310 S.E. 2d 25 (1983), *cert. denied,* 310 N.C. 744, 315 S.E. 2d 703 (1984). This issue was not reached in *Norris.* Rather, the fact that respondents were not represented by counsel at the neglect hearings does not preclude the admission of the prior order into evidence. The admissibility of prior orders is not conditioned on whether the parents were represented by counsel. *Ballard, supra. See also In re Clark,* 303 N.C. 592, 281 S.E. 2d 47 (1981) (in termination proceeding brought prior to 9 August 1981, indigent parent not entitled to counsel as a matter of law).

[4] Respondents next argue that the court erred in admitting the testimony of certain expert witnesses to the effect that the respondents' parental rights should be terminated. They argue

that this testimony invaded the province of the finder of fact. In considering the admissibility of expert opinion testimony, the determinative test is not whether that testimony concerned the ultimate issues and thereby invaded the province of the finder of fact, but rather "whether the opinion expressed is really one based on the special expertise of the expert, that is, whether the witness because of his expertise is in a better position to have an opinion on the subject than is the finder of fact." *State v. Wilkerson*, 295 N.C. 559, 568-69, 247 S.E. 2d 905, 911 (1978).

The testimony of the two witnesses to which respondents attribute error is as follows: Doris Conn, a former DSS employee, was tendered as an expert in the field of juvenile protective services and in permanency placing of children. She testified that she had worked with Yavonka Byrd from December 1978 to March 1980, and that in her opinion "parental rights should be terminated in order that permanency placement for Yavonka could be completed." Francille Sexton, testifying as an expert in infant development and permanency planning for children, stated that "the parental rights should be terminated and she should be placed in a secure and stable environment," and "that if she could be placed in a permanent environment so that she would feel secure that it would facilitate her development since that was a deterrent in working with her."

The quoted testimony satisfies the test for expert opinion testimony. The substance of the testimony, based on the expertise and knowledge of the witnesses, was that Yavonka Byrd was in need of permanent placement and a stable home environment. The witnesses were unquestionably in a better position than the trial court to have an opinion on this subject, and their testimony undoubtedly aided the court in making its determination in this case. Although the better practice would be to have expert witnesses refrain from expressly testifying whether parental rights should be terminated, it was not error for the trial court to admit this testimony. We overrule this assignment of error.

Respondents also contend that it was prejudicial error for the trial court to have admitted the testimony of Ms. Sexton because her testimony was based in part on reports and records concerning an evaluation of Yavonka by a multi-disciplinary team at the Western Carolina Center in Morganton. They further ar-

gue that it was error to admit the records and reports into evidence. Francille Sexton was the team coordinator for Yavonka's evaluation; she also personally conducted diagnostic evaluations of Yavonka. She testified that she is the custodian of the reports made by the team evaluating Yavonka, and also that she relied on those reports and records in her testimony. There was no error in allowing Ms. Sexton to rely upon the reports in reaching her conclusions. An expert "has wide latitude in gathering information and may base [an] opinion on evidence not otherwise admissible." *State v. DeGregory*, 285 N.C. 122, 203 S.E. 2d 794 (1974).

Nor was it error to admit these documents into evidence on the basis that their contents were inadmissible hearsay. The trial court specifically denied that it was receiving the reports into evidence for proof of what they contained, but was admitting them for the limited purpose "of showing only the general extent of the efforts made to reach and rehabilitate each of the parents of Yavonka and the responses [if] any which were made by Mr. and Mrs. Byrd to those reports." In a similar vein, counsel for petitioner explained that he wished to introduce the reports into evidence only for the purpose of establishing what are essentially the grounds of G.S. 7A-289.32(3). Respondents' parental rights were not terminated pursuant to G.S. 7A-289.32(3), but pursuant to G.S. 7A-289.32(2) and (4). We therefore fail to see how respondents were in any manner prejudiced by the admission of the reports and records.

[5] The trial court also terminated respondents' parental rights pursuant to G.S. 7A-289.32(4), upon a finding that while the child was in DSS custody the parents had failed to pay a reasonable portion of the cost of care of the child for a continuous period of six months next preceding the filing of the petition. Respondents contend their parental rights were improperly terminated under this subsection, and here we agree with respondents.

The record indicates that between 27 June 1979 and 8 March 1983, the date on which the petition was filed, respondents paid a total of $90.00 to the DSS towards the support of their child. The record also contains evidence of Mr. Byrd's employment history between 18 April 1979 and 8 May 1981, and of Mrs. Byrd's employment history between 11 September 1979 and 17 August 1981. On 21 January 1982, however, both respondents were con-

victed of manslaughter, and were incarcerated for the six months next preceding the filing of the petition. The Supreme Court later held that the respondents' motions for dismissal in that case should have been granted, and reversed the Court of Appeals decision affirming the conviction. *State v. Byrd*, 309 N.C. 132, 305 S.E. 2d 724 (1983).

*In re Bradley*, 57 N.C. App. 475, 291 S.E. 2d 800 (1982), also involved a situation in which the respondent parent was incarcerated during the six months next preceding the filing of the petition. This Court held that where the respondent had been removed from the prison work-release program due to his violation of prison regulations, the trial court did not err in finding he was able to pay an amount greater than zero toward the support of his child:

> Where . . . the parent had an opportunity to provide for some portion of the cost of care of the child, and forfeits that opportunity by his or her own misconduct, such parent will not be heard to assert that he or she has no ability or means to contribute to the child's care and is therefore excused from contributing any amount.

*Id.* at 479, 291 S.E. 2d at 802-3. What distinguishes the case before us and *Bradley* is that here respondents' conviction was ultimately reversed. Because of this reversal, we cannot say as a matter of law that respondents by their intentional misconduct forfeited the opportunity to contribute towards their child's care.

The respondents next argue that it was error to admit testimony concerning a child other than Yavonka Byrd, in that the testimony erroneously tended to demonstrate respondents' conduct toward Yavonka. Counsel for petitioner asked Joseph Byrd whether his voluntary manslaughter conviction was in connection with the death of his son, JoVon Byrd. Respondent counsel's objection to this question was sustained. Petitioner's counsel continued to question Joseph Byrd concerning JoVon's death. The trial court overruled objections to these further questions. The information elicited from Joseph Byrd during this line of questioning was that it was his belief that JoVon died from natural causes, that the pathologists who conducted the autopsy had conflicting opinions as to cause of death, and that he did not know how his daughter was injured because she was not in his care

when she was injured. Judge Tate then sustained an objection when counsel for petitioner asked Mr. Byrd whether the injuries he observed on Yavonka's body were similar to those of JoVon shortly before his death. Whether or not this line of questioning was proper, no testimony prejudicial to respondents was elicited. The trial court was careful to sustain objections to questions that might have elicited prejudicial information. Additionally, none of the findings of fact contained in the order terminating parental rights indicate that Judge Tate relied on any of the information elicited from this line of questioning. *See State v. Davis*, 290 N.C. 511, 227 S.E. 2d 97 (1976) (findings of fact will be reversed where it affirmatively appears that they are based in whole or in part upon incompetent evidence).

**[6]** Respondents also contend that the court erred in not appointing a separate attorney for each respondent, suggesting that the trial court was predisposed to decide the case for or against respondents as a couple. Prior to trial, upon a finding of indigency, respondents were appointed counsel by Judge Tate. Respondents failed to make any objection to Judge Tate's action in appointing counsel, which is necessary to preserve the right to appeal. N.C. Rules App. Proc., Rule 10. In any event, respondents' argument is completely unsupported by the record. Respondents were ably represented by their appointed counsel both at trial and on this appeal. The record contains sufficient competent evidence to terminate the parental rights of both respondents. There is no indication the trial court treated Joseph and Sheree Byrd as a couple rather than as individuals. Although some of the factual findings in Judge Tate's order apply to both respondents, others are specifically directed to one or the other respondent.

Finally, respondents make a group of arguments attacking the order in a broadside fashion, contending that the factual findings are not supported by clear, cogent, and convincing evidence, that these findings do not support the conclusions of law, which findings and conclusions do not, in turn, support the judgment. Although respondents have correctly stated the evidentiary standard required to support a judgment terminating parental rights, *see, e.g., In re Montgomery*, 311 N.C. 101, 316 S.E. 2d 246 (1984), we find that as to G.S. 7A-289.32(2) the findings were supported by clear, cogent, and convincing evidence, which findings

supported the trial court's conclusions and judgment. Once a petitioner has met its burden of proof at the adjudication stage, the court moves on to the disposition stage where the decision to terminate parental rights is always discretionary. *Montgomery, supra.* No abuse of discretion occurred here and the judgment appealed from is accordingly

Affirmed.

Chief Judge VAUGHN and Judge BRASWELL concur.

Former Chief Judge VAUGHN concurred in the result reached in this case prior to 31 December 1984.

Judge BRASWELL concurred in the result reached in this case prior to 31 December 1984.