IN RE: CSJ, KS, NS, & CMS, Minor Children.
No. COA08-631
Court of Appeals of North Carolina
Filed November 4, 2008
This case not for publication
Jayne B. Norwood for Nash County Department of Social Services, petitioner-appellee.
Carolyn O'Garro-Moore for guardian ad litem.
The Turrentine Group, PLLC, by Karlene S. Turrentine, for respondent-appellant.
ELMORE, Judge.
On 11 October 2006, the Nash County Department of Social Services (DSS) filed juvenile petitions alleging that the four children named in the petitions were neglected juveniles. The court adjudicated the children as neglected by an order filed on 26 April 2007. DSS subsequently filed a motion to terminate the parental rights of both parents on 13 December 2007. Following a hearing on 14-15 February 2006, the court filed an order on 13 March 2008 terminating the parental rights of both parents on the ground that they neglected the children. The mother (Mother) of the children appeals. In August 2006, DSS received a referral alleging that the parents left the children alone and unsupervised in a motel. During the investigation of this referral, an older half-sibling (Demi[1]) of the four children who also lived in the household revealed to a social worker that the father (Father) of the four children at bar had sexually abused her. In its order adjudicating the children as neglected, the court found that Demi had been raped by Father and that she had disclosed the abuse to Mother. The court also found that Mother and Father had a fight when Mother found Father on top of Demi's sister; that Mother denied having any knowledge of any sexual abuse of Demi or that Demi had disclosed the sexual abuse to her; that the parents left the children in a motel in Greenville without food or adult supervision; that Mother was charged with noncompliance with school attendance laws because of excessive absenteeism of her older children; and that Demi, while in Mother's care, sustained a gunshot wound to her leg during an altercation between her biological father and Father.
In the order under review, the court found the foregoing facts to be relevant to the termination of parental rights proceeding. As additional findings of fact, the court found that "[i]t is clear from the adjudicatory Order that [Mother and Father] needed to address basic parenting issues like providing food, clothing, shelter, a home free of criminal activity, a home free of sexual abuse, a home free of domestic violence, and a home free of substance abuse" and that there is "little evidence that either of them has done so." The court's findings of fact further indicate that Mother continues to believe that Father did not sexually abuse Demi, that Father poses no risk to her children, and that he is a good father to the children. On the day the children were adjudicated neglected, Mother and Father were arrested and charged with manufacturing and distributing crack cocaine. One of the children tested positive at birth for the presence of cocaine and a second child tested positive at birth for opiates. Mother and Father resided in a residence maintained for the purpose of manufacturing and distributing cocaine. One of the children required extensive dental care, including the extraction of ten teeth, due to extraordinary tooth decay. Mother could not recall the details of the child's condition or treatment although she stated that she was present at the procedure. Since October 2006, Mother has resided at multiple residences and she has worked at least four different jobs within the past six months. Mother has used approximately only one-half of the opportunities afforded to her for visitation. Mother failed to attend a child and family team meeting on 26 April 2007 to discuss placement of the children into foster care, failed to keep numerous appointments with her social worker, failed to provide DSS with reliable telephone and contact information, and failed to notify the children's caretakers of her whereabouts so that they could take the children to visit her.
The court also found that "[i]t is not foreseeable in the near future that these children will leave foster care . . . because of their mother's history of unstable residences, income, lack of employment, her drug activity and intermittent estrangement from her family that have offered her support for years." The court concluded that Mother has "neglected the children within the meaning of N.C.G.S. §7B-101(15) and if the children were returned to the home of their parents it is likely that neglect would continue." The court further concluded that a ground exists pursuant to N.C. Gen. Stat. § 7B-1111 to terminate their parental rights, and that "it is in the best interest of [the] children . . . that the parental rights of the [parents] be terminated."
Mother first contends that the trial court abused its discretion and committed reversible error by failing to conduct separate hearings or to make separate findings of fact and conclusions of law during the adjudication and disposition phases.
A termination of parental rights proceeding consists of two stages, an adjudicatory stage and a disposition stage. In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). At the adjudication stage, the party seeking to terminate parental rights must prove by clear, cogent, and convincing evidence that a statutory basis for terminating parental rights exists. Id. If the court determines that a basis for terminating parental rights exists, then it proceeds to the disposition stage in which it determines whether termination of parental rights is in the best interest of the child. Id. at 247, 485 S.E.2d at 615. There is no requirement that the stages be conducted at two separate hearings. In re White, 81 N.C. App. 82, 85, 344 S.E.2d 36, 38 (1986).
[S]ince a proceeding to terminate parental rights is heard by the judge, sitting without a jury, it is presumed, in the absence of some affirmative indication to the contrary, that the judge, having knowledge of the law, is able to consider the evidence in light of the applicable legal standard and to determine whether grounds for termination exist before proceeding to consider evidence relevant only to the dispositional stage.
Id. at 85, 344 S.E.2d at 38 (citation omitted).
The order under review states that the findings of fact are based upon clear, cogent, and convincing evidence. In the conclusions of law, the court again stated that a ground for terminating rights had been proved by clear, cogent, and convincing evidence. The court separately concluded that termination of parental rights is in the best interest of the children. The court's order thus demonstrates that the court was aware of the different standards of review and that these standards were applied appropriately. We thus hold that the court did not err by failing to conduct separate hearings or to segregate the adjudicatory and dispositional findings.
Mother next contends the court abused its discretion and committed reversible error by taking judicial notice of prior orders and court studies entered in this case and making findings of fact and conclusions of law based upon them. We disagree. It is a settled principle that a trial court "may take judicial notice of earlier proceedings in the same cause." In re Byrd, 72 N.C. App. 277, 279, 324 S.E.2d 273, 276 (1985). More specifically, prior orders adjudicating a child neglected are admissible in a termination hearing. In re Ballard, 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984).
In a trial or hearing by the court without a jury, the rules of evidence are not so strictly enforced as in a jury trial and it will be presumed that the judge disregarded any incompetent evidence that may have been admitted unless it affirmatively appears that he was influenced thereby.
Stanback v. Stanback, 31 N.C. App. 174, 179-80, 229 S.E.2d 693, 696 (1976). Here, the trial court stated that the findings of fact were based upon clear, cogent, and convincing evidence, and nothing in the record indicates that the trial court failed to conduct the independent determination required when it took judicial notice of the prior orders entered in the matter. See In re J.W., 173 N.C. App. 450, 456, 619 S.E.2d 534, 540 (2005) ("The trial court specifically found that it had considered the testimony offered by both petitioner and respondent's witnesses at the hearing in making its determination of neglect."), aff'd per curiam, 360 N.C. 361, 625 S.E.2d 780 (2006); In re J.B., 172 N.C. App. 1, 16, 616 S.E.2d 264, 273 (2005) ("[N]othing in the record indicates that the trial court failed to conduct the independent determination required at a termination hearing when prior disposition orders have been entered in the matter."). We overrule this contention.
Mother's final contention is that the court abused its discretion and committed reversible error by finding as fact and concluding as law that there is evidence of the likelihood of neglect continuing in the future and that it is in the best interest of the children that her parental rights be terminated. She argues that the trial court made its findings of fact and conclusions of law "almost wholly based" upon prior orders, court summaries, and reports. We disagree.
If a child has been removed from a parent's custody prior to a termination of parental rights proceeding and evidence of prior neglect is presented, including a prior adjudication of neglect, then "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of repetition of neglect." Ballard, 311 N.C. at 715, 319 S.E.2d at 232 (citation omitted). The court's findings of fact summarized above show that the trial court considered not only evidence of neglect present at the time of the original adjudication but also evidence of neglect that has persisted and transpired since that time.
Upon determining the existence of a ground to terminate the parent's parental rights, the trial court then had to decide whether the child's best interest required termination of parental rights. N.C. Gen. Stat. § 7B-1110(a) (2007). "The decision to terminate parental rights is vested within the sound discretion of the trial judge and will not be overturned on appeal absent a showing that the judge['s] actions were manifestly unsupported by reason." In re J.A.A. & S.A.A., 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005) (citation omitted). In determining whether termination of parental rights is in the best interest of the child, the trial court considers:
(1) The age of the juvenile;
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any other relevant consideration.
N.C. Gen. Stat. § 7B-1110(a) (2007).
Here, the court's findings show that two of the children (ages two and five) are placed with maternal relatives, with whom they have formed strong bonds. The maternal relatives have had custody of an older sibling of the children for fifteen years and have expressed interest in adopting the children. The other two children, ages four and seven, are in need of stability. Although an adoptive home has not yet been identified, it is anticipated that one will be located for them.
We affirm the court's order terminating Mother's parental rights.
Affirmed.
Chief Judge MARTIN and Judge STEELMAN concur.
Report per Rule 30(e).
NOTES
[1] "Demi" is a fictitious name created to keep the child's identity confidential.