IN THE MATTER OF: A.S.S.
No. COA09-1183.
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
Erica Glass McDoe, for petitioner-appellee Randolph County Department of Social Services.
Lucy Tatum Austin, for guardian ad litem.
Christy E. Wilhelm, for respondent-appellant mother.
WYNN, Judge.
Respondent appeals from an order terminating her parental rights to A.S.S. ("Ashley").[1] After careful review, we affirm.
On 2 July 2008, the Randolph County Department of Social Services ("DSS") filed a petition alleging that Ashley was a neglected juvenile. At the time of the filing of the petition, Respondent was incarcerated. Ashley had been in her father's care since Respondent's incarceration in June 2008.[2] DSS alleged that Respondent was unable to provide for Ashley and did not have another plan for the child's care. DSS further alleged that Respondent advised them that she would rather see Ashley in foster care than in the custody of the father. Ultimately, a non-secure custody order was entered and Ashley was placed in the custody of DSS.
On 8 October 2008, nunc pro tunc 20 August 2008, the district court adjudicated Ashley a neglected juvenile by consent of the parties. The trial court ordered Respondent to: (1) attend and complete parenting classes and implement the skills learned in the classes at visitation, (2) participate in a substance abuse assessment and comply with all recommendations, (3) submit to requests for random drug screens, (4) refrain from using any illegal drugs, or legal drugs without a prescription, (5) obtain and maintain stable housing and employment, (6) attend domestic violence counseling, and (7) comply with the conditions of her probation. The court further ordered that Respondent attend supervised visitation for a minimum of one hour per week. The order also stated that Ashley was to remain in the custody of DSS. Lastly, although the trial court approved of Ashley's placement in the home of the maternal aunt and uncle, the child's placement was left to the discretion of DSS.
The district court held permanency planning review hearings on 17 December 2008 and 28 January 2009. The court found as fact that Respondent "continues to have unstable, inappropriate housing." DSS made home visits to the Respondent's residence, which was the mobile home of Respondent's maternal grandmother. DSS found several individuals living at the residence, and "[e]xcessive alcohol bottles and beer cans were found lying outside the home." The court further found that multiple 911 calls reporting incidents ranging from assault to drug use were received from the residence. Additionally, the court found that Respondent admitted to having been assaulted by her boyfriend. Furthermore, the trial court found that Respondent had failed to submit to several drug screens and did not consistently attend drug treatment. Finally, the court found that Respondent had not attended domestic violence or parenting classes and continued to be unemployed.
On 18 February 2009, Petitioner filed a motion to terminate Respondent's parental rights. Petitioner alleged three grounds for termination: (1) Respondent had neglected Ashley within the meaning of N.C. Gen. Stat. § 7B-101; (2) Ashley had been placed in the custody of the Petitioner and that Respondent, for a continuous period of six months immediately preceding the filing of the petition, had failed to pay a reasonable portion of the cost of care for Ashley although physically and financially able to do so; and (3) Respondent was incapable of providing for the proper care and supervision of Ashley, such that Ashley was a dependent juvenile within the meaning of N.C. Gen. Stat. § 7B-101(9), and there was a reasonable probability that such incapability would continue for the foreseeable future due to the Respondent's substance abuse issues.
A hearing was held on the petition to terminate Respondent's parental rights on 17 June 2009. The trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (3) and (6) to terminate Respondent's parental rights. The court further concluded that it was in Ashley's best interests that Respondent's parental rights be terminated. Accordingly, on 15 July 2009, nun pro tunc 17 June 2009, the trial court terminated Respondent's parental rights. Respondent appeals.

I.
In her first argument, Respondent contends that the trial court's findings of fact were not supported by clear, cogent, and convincing evidence. " `[F]indings of fact made by the trial court. . . are conclusive on appeal if there is evidence to support them.' " In re H.S.F., 182 N.C. App. 739, 742, 645 S.E.2d 383, 384 (2007) (quoting Hunt v. Hunt, 85 N.C. App. 484, 488, 355 S.E.2d 519, 521 (1987)). Because the court's findings of fact were supported by the evidence, we find no merit to this argument.
Preliminarily, we note that N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights including, inter alia, a finding that the parent neglected the child. N.C. Gen. Stat. § 7B-1111(a) (2009). In the instant case, the trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to terminate Respondent's parental rights because the parent had neglected the juvenile. A finding of any one of the separately enumerated grounds established by statute is sufficient to support a termination of parental rights. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). Accordingly, our review will be limited to whether there was clear, cogent, and convincing evidence to support the findings of facts from which the court concluded that Ashley was neglected.[3]
"Neglected juvenile" is defined in N.C. Gen. Stat. § 7B-101(15) as:
[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen. Stat. § 7B-101(15) (2009). Generally, "[a] finding of neglect sufficient to terminate parental rights must be based on evidence showing neglect at the time of the termination proceeding." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). However, "a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect." In re Ballard, 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984). Where a prior adjudication of neglect is considered by the trial court, "[t]he trial court must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." Id. at 715, 319 S.E.2d at 232. Thus, where
there is no evidence of neglect at the time of the termination proceeding . . . parental rights may nonetheless be terminated if there is a showing of a past adjudication of neglect and the trial court finds by clear and convincing evidence a probability of repetition of neglect if the juvenile were returned to [his or] her parents.
In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000).
Here, the court found as fact that on 20 August 2006, Ashley was adjudicated a neglected juvenile. This finding was clearly supported by the record of earlier proceedings in this case, of which the trial court permissibly took judicial notice. See In re J.W., K.W., 173 N.C. App. 450, 455-56, 619 S.E.2d 534, 539-40 (2005), aff'd per curiam, 360 N.C. 361, 625 S.E.2d 780 (2006). The trial court further found that there was "a likelihood that neglect will continue if the minor child is placed in the [Respondent's] home." Thus, we must determine whether there existed sufficient evidence to support the trial court's findings as to the likelihood of continued neglect.
At the hearing in which Ashley was initially adjudicated a neglected juvenile, Respondent was ordered to obtain stable housing and employment, attend parenting classes and domestic violence counseling, participate in substance abuse treatment, refrain from illegal drug use or taking drugs for which she did not have a valid prescription, submit to random drug screens, and visit with Ashley a minimum of one hour per week. In its order terminating Respondent's parental rights, the trial court made multiple findings regarding her failure to complete the requirements ordered earlier by the court. The trial court found that Respondent had:
1. Not completed parenting classes. The Mother was ordered to complete parenting classes, and at this time, she [has] failed to do so.
2. Not obtained and maintained stable and appropriate housing. The Mother has lived in the maternal great-grandmother's home since the minor child has been in the Department's custody. Several other individuals live in the grandmother's home other than the Mother including the maternal grandmother, the maternal great-grandmother, [a] maternal uncle, and a family friend. Many 911 calls have been made from the maternal great-grandmother's residence since the minor child was placed in the Department's custody on July 1, 2008.
3. Not obtained and maintained stable employment. The Mother was employed at Design Concepts from August 19, 2008 to September 2008. The Mother has not been employed since September 2008.
4. Not complied with recommended substance abuse treatment. The Mother received a substance abuse assessment in April 2008, and her assessment recommended that she participate in intensive outpatient treatment three times a week for three months. The Mother did not comply with this treatment. On November 12, 2008, the Mother began substance abuse treatment classes at the Day Reporting Center in Asheboro, North Carolina, but she was unsuccessfully discharged from these classes due to her non-compliance with treatment. On May 29, 2009, the Mother began the LATCH program, a program the Mother has accessed since she has been incarcerated. With the LATCH program, the Mother speaks with her counselor once a week. At this time, the Mother has not completed this program.
5. Not completed domestic violence counseling. The Mother began domestic violence counseling, but she failed to complete her counseling sessions.
6. Not submitted to all requested random drug screens. The Mother was ordered to comply with all requests for random drug screens. The Mother tested negative for drugs on August 20, 2008. On September 9, 2008, October 13, 2008, and October 14, 2008, the Mother failed to submit to requests for drugs screens on these dates. On November 12, 2008, the Mother tested positive for marijuana. On November 25, 2008, the Mother tested positive for opiates. On December 1, 2008, the Mother's urine sample was an adulterated sample. On January 12, 2009, the Mother's hair sample tested negative for drugs but her urine sample was positive for opiates. On January 13, 2009, the Mother's urine sample was positive for opiates. On February 5, 2009, the Mother's urine sample was positive for marijuana and her hair sample was positive for marijuana. After the February 5, 2009, the Mother was unavailable to submit to random drug screens due to her incarceration.
7. Tested positive for medication not prescribed to her. The Mother never provided verification of any medication that was prescribed for her when she tested positive for opiates on the drug screens she did submit to prior to her incarceration.
8. Inconsistently visited with the minor child. The Mother was allowed to visit with the minor child for a minimum of one hour per week at the home of the minor child's placement providers. The Mother only visited with the minor child on September 6, 2008, September 13, 2008, October 11, 2008, November 8, 2008, December 6, 2008, and January 15, 2009.
We review each finding to determine if it was supported by clear, cogent, and convincing evidence. In paragraph 1, the record demonstrates that Respondent did not complete parenting classes. The record indicates that a DSS social worker referred Respondent to Parenting Matters classes in October 2008, but Respondent did not attend. DSS registered Respondent again in parenting classes in January 2009. There is no evidence in the record that she attended these classes. Although Respondent contends that she was incapable of completing these tasks due to her incarceration and/or pregnancy, it is the trial judge's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." In re Whisnant, 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984). Accordingly, based on the evidence presented, the trial court could properly find that Respondent failed to complete court-ordered parenting classes.
Regarding the findings made in paragraph number 2 above, Respondent contends that the trial court failed to recognize that she acknowledged her great-grandmother's home as being inappropriate, and that she had a plan to obtain suitable housing when she was released from prison. However, Respondent testified that when she was again released from prison, she would have to return to her great grandmother's home. In light of the uncontested evidence regarding the inappropriateness of the great grandmother's home, the trial court could properly find that Respondent failed to obtain or maintain stable housing.
Regarding the findings made in paragraph number 3 above, Respondent argues that the trial court failed to consider changed circumstances and ignored the fact that she was either incarcerated or pregnant during large portions of time during this case. According to the record, Respondent was released from prison in August 2008, and was incarcerated again in February 2009. Respondent failed to maintain suitable employment during the period of time that she was not in prison, and she provided no testimony regarding any prospects for employment upon her release.[4] Therefore, the record shows evidence sufficient to find that Respondent failed to obtain or maintain stable employment.
Regarding the findings made in paragraph number 4 above, Respondent contends that the court failed to properly consider her enrollment in the LATCH program. However, Respondent did not begin the LATCH program until May 29, 2009, just a few weeks prior to the termination hearing. Prior to that time, Respondent failed to comply with the requirement that she attend and complete drug treatment. First, Respondent was enrolled in an intensive outpatient treatment program at the Day Reporting Center. Respondent was scheduled to begin classes on 22 September 2008, but she failed to attend. Respondent again enrolled in classes at the Day Reporting Center in November 2008, but again failed to complete the classes. Accordingly, the record shows evidence sufficient to find that Respondent failed to comply with recommended substance abuse treatment.
Regarding the findings made in paragraph number 5 above, Respondent contends the trial court failed to consider evidence that she had begun taking a domestic violence course and was just shy of completing the classes. However, the evidence also demonstrates that Respondent waited until just six weeks prior to the hearing to begin taking the eight-week course. Furthermore, there was evidence in the record that Respondent had been referred to domestic violence classes by DSS, and was offered transportation, but did not attend because she did not believe she needed the classes. Therefore, the record shows evidence sufficient to find that Respondent failed to comply with the requirement that she complete domestic violence counseling.
Regarding the findings made in paragraph number 6 above, Respondent contends that "the trial court did not hold [DSS] accountable for tracking [Respondent's] drug use or lack thereof after February 2009 when the motion to terminate parental rights was filed, so it had no way to track whether [Respondent] was making progress on this point." We find Respondent's argument unpersuasive. Respondent does not contest the fact that, prior to her return to prison and the filing of the motion to terminate her parental rights, Respondent either failed to submit to, or tested positive in, drugs screens on numerous occasions. Therefore, we conclude that the trial court's finding was properly supported by the evidence.
In the findings made in paragraph number 7 above, the court found that Respondent tested positive for medication not prescribed to her. Respondent contends that this finding conflicts with her trial testimony. Respondent testified that she showed a DSS social worker verification of her prescriptions and signed a medical release form so the social worker could review her medical records. However, the social worker testified to the contrary. At the termination hearing, the social worker testified that Respondent tested positive for medications for which she did not have a prescription, that Respondent did not sign a release, and that she had "no verification where any of her meds were coming from." It was the trial judge's duty to pass upon the credibility of the witnesses and resolve any conflicts in the evidence. Whisnant, 71 N.C. App. at 441, 322 S.E.2d at 435. Accordingly, the trial court could properly rest its finding on the social worker's testimony, and ignore Respondent's testimony, when making its finding of fact.
Regarding the findings made in paragraph number 8 above, the trial court found that Respondent inconsistently visited the minor child. The trial court found that Respondent visited with Ashley on only six occasions. Although Respondent again contends that she was incapable of completing this task due to her incarceration and/or pregnancy, we reiterate that it was the trial judge's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." Id. Furthermore, during the interval when Respondent was not incarcerated, Respondent still failed to attend weekly visitation as ordered; indeed, the record indicates that she only visited Ashley four times between October 2008 and December 2008. Accordingly, we conclude that the record shows evidence sufficient to find that Respondent inconsistently attended visitation.
It is apparent from the trial court's findings that Respondent failed to adequately address her substance abuse issues, did not complete her parenting or domestic violence classes, did not obtain employment or maintain suitable housing, and did not abide by the trial court's visitation requirements. Therefore, based on the clear, cogent and convincing evidence in the record and accordant findings, the trial court was free to conclude that Respondent neglected Ashley, and that the neglect was likely to continue should Ashley be returned to Respondent's care. Accordingly, we find no merit in Respondent's argument.

II.
Respondent also argues that a number of the trial court's findings of fact amounted to an improper delegation of the trial court's fact-finding duty because the court "adopted `whole cloth' the allegations made by the Randolph DSS." This Court has explained that while "it is permissible for trial courts to consider all written reports and materials submitted in connection with those proceedings[,] . . . the trial court may not delegate its fact finding duty." In re J.S., 165 N.C. App. 509, 511, 598 S.E.2d 658, 660 (2004)(citation omitted). An improper delegation occurs when the trial court "broadly incorporate[s] these written reports from outside sources as its findings of fact." Id. Nothing in the record indicates that any improper delegation of the trial court's fact-finding duty occurred in this case. The trial court did not state in its order that it was incorporating the DSS reports as its findings of fact.[5] Indeed, it did not incorporate by reference the DSS reports at all. Instead, the court made its own findings of fact based on the information contained in the reports. Although Respondent complains that the trial court took its findings from the DSS reports, the trial court was entitled to do so once the reports were admitted into evidence and it determined that the reports were credible. We therefore find no merit in this argument.

III.
Respondent next argues that the trial court's conclusions of law were not supported by its findings of fact. Again we note that a finding of any one of the separately enumerated grounds established by statute is sufficient to support a termination of parental rights. Taylor, 97 N.C. App. at 64, 387 S.E.2d at 233-34. We held above that there existed sufficient evidentiary support for the trial court's findings that Ashley was neglected and that there existed a likelihood of continued neglect if the child was placed in Respondent's home. These findings, taken together, constitute the necessary support for the legal conclusion that the child was neglected. See Reyes, 136 N.C. App. at 814-15, 526 S.E.2d at 501. "The trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the [juvenile's] best interests." In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). As a discretionary decision, the trial court's disposition order will not be disturbed unless it could not have been the product of reasoning. In re J.B., 172 N.C. App. 747, 751, 616 S.E.2d 385, 387, aff'd per curiam, 360 N.C. 165, 622 S.E.2d 495 (2005). Since a finding of neglect is one of the statutory grounds for the termination of parental rights, our review will be limited to whether the trial court abused its discretion when concluding that the termination of Respondent's parental rights was in the child's best interest.
Our legislature has dictated factors to consider when determining whether termination of parental rights is in the juvenile's best interest, including (1) the age of the juvenile, (2) the likelihood of adoption, (3) whether the termination of rights will aid in the accomplishment of the permanent plan for the juvenile, (4) the bond between the juvenile and the parent, (5) the relationship between the juvenile and a proposed adoptive parent or other permanent placement, and (6) any other relevant consideration. N.C. Gen. Stat. § 7B-1110(a) (2009). The court is to take action "which is in the best interests of the juvenile" when "the interests of the juvenile and those of the juvenile's parents or other persons are in conflict." N.C. Gen. Stat. § 7B-1100(3) (2009).
In the instant case, the trial court made the following dispositional findings of fact:
11. That an entry of an order terminating parental rights of the . . . Mother would not result in an unnecessary severance of the relationship between the biological parent[] [and] the minor child.
. . . .
16. The minor child was placed in the home of her Maternal Aunt . . . and her husband . . . on August 18, 2008, after the Mother requested that they be considered as a placement option for the minor child. The minor child, having known [the aunt and uncle] prior to foster care, transitioned into their home with ease, and has continued doing well in this home, and bonding with the family. [The uncle's] two sons also reside in the home and they are 15 and 17 years old. [The aunt and uncle] are also expecting their first child together.
17. The minor child states that she feels safe in [the aunt and uncle's] home and she feels that [they] take good care of her. [The aunt and uncle] have been able to address any concerns that have arisen with the minor child and have also seen that she participate[s] in therapy as scheduled with her therapist[.]
18. [The aunt and uncle] completed MAPP/GPS classes and are working with [DSS] to obtain their license. [The aunt and uncle] have expressed their desire to adopt the minor child [Ashley] should she become free. It is the [aunt and uncle's] desire to continue providing care for the minor child [Ashley] in their home.
Additionally, during the adjudicatory phase, the trial court made a finding of fact regarding the juvenile's age.
Having addressed each of the factors required by the controlling legislation, the trial court concluded that the best interests of the juvenile would be served by termination of Respondent's parental rights. Based on the findings of fact made by the trial court, we can discern no abuse of discretion.
Respondent's final argument, that the trial court erred by failing to conclude the hearing within the statutory time period, is not argued in her brief, and therefore it is deemed abandoned. N.C.R. App. P. Rule 28(b)(6) (2010).
Affirmed.
Judges HUNTER, JR. and BEASLEY concur.
Report per Rule 30(e).
NOTES
[1] The pseudonym "Ashley" is used throughout this opinion to protect the minor child's privacy and for ease of reading.
[2] The petition included numerous allegations regarding Ashley's father and his failure to properly care for the child. DSS alleged that he had untreated substance abuse issues, had tested positive for marijuana, and often appeared to be under the influence of alcohol. DSS alleged that the father had regularly driven with Ashley in his vehicle despite not having a valid driver's license. DSS further alleged that the father had failed to update Ashley's immunizations as requested. Additionally, on 22 April 2008 Ashley had been diagnosed with a urinary tract infection and the father allegedly failed to obtain the medication that was prescribed for the infection. DSS alleged that in the two days prior to the filing of the petition, Ashley arrived at daycare "dirty and unkempt . . . . She was wearing clothing that did not fit properly, appeared to be unbathed, and smelled strongly of the odor of dogs." Finally, the petition alleged that on 1 July 2008, Ashley's father failed to pick her up from daycare. Instead, a "stranger" arrived to pick up Ashley and claimed that she had been sent by the child's father. The daycare staff refused to release Ashley to the stranger and was unable to contact the father. Because Ashley's father did not appeal the termination of his parental rights, however, our review will focus on the issues relevant to the termination of Respondent's parental rights.
[3] Respondent additionally argues that the trial court erred because there was not clear, cogent, and convincing evidence to support the trial court's conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(3) and (6) to terminate her parental rights. However, because we conclude below that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) to support the trial court's order, the remaining grounds found by the trial court to support termination need not be reviewed by the Court. Taylor, 97 N.C. App. at 64, 387 S.E.2d at 233-34; see also In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground[s] . . . found by the trial court."). We further decline to review Respondent's arguments concerning alleged errors made by the trial court that were not germane to its conclusion that Respondent neglected Ashley.
[4] The record includes mention of a job held for less than a month by Respondent. However, the record further indicates that Respondent was fired after being found passed out in the bathroom. Although Respondent testified as to different reasons for her firing, she denied neither the brevity of her former employment nor the fact that she was currently unemployed and had no concrete prospects for future employment. Thus, although Respondent may argue that she obtained employment, albeit briefly, the record shows that she did not maintain employment as ordered by the court.
[5] We realize that one of the challenged findings states that "the Court takes judicial notice of the underlying juvenile file." However, as Respondent concedes, the trial court "may take judicial notice of earlier proceedings in the same cause." In re J.W., K.W., 173 N.C. App. at 455-56, 619 S.E.2d at 539-40 (quoting In re Byrd, 72 N.C. App. 277, 279, 324 S.E.2d 273, 276 (1985). Respondent also notes the finding that "[t]he reports of the Social Worker and the Guardian ad Litem were received into evidence for the purpose of disposition." However, receipt of reports into evidence does not amount to the incorporation of these reports into the record.