IN THE MATTER OF: B.S.D.S., A Minor Child

No. COA03-365

(Filed 6 April 2004)

**1. Termination of Parental Rights— subject matter jurisdiction—petition**

A petition to terminate parental rights was sufficient to invoke subject matter jurisdiction where the petition stated the correct statutory chapter, even though it omitted a phrase from

**IN RE B.S.D.S.**

[163 N.C. App. 540 (2004)]

the statute title, thus inadvertently referring to a previous statute. Both statutes shared the same purpose and there was no danger of prejudice.

**2. Termination of Parental Rights— lack of progress in correcting problems—sufficiency of evidence**

There was sufficient evidence in a termination of parental rights proceeding to support a finding of lack of progress under N.C.G.S. § 7B-1111(a)(2) (willfully leaving child in foster care for more than 12 months without showing reasonable progress in correcting problems). A respondent's prolonged inability to improve her situation, despite some efforts, supports a finding of wilfulness.

Appeal by respondent from order dated 22 November 2002[1] by Judge Jonathan L. Jones in Burke County District Court. Heard in the Court of Appeals 19 November 2003.

*Stephen M. Schoeberle for petitioner-appellee Burke County Department of Social Services.*

*Susan J. Hall for respondent-appellant.*

*Attorney Advocate Mary R. McKay, guardian ad litem for minor child-appellee.*

BRYANT, Judge.

J.A.C.S. (respondent) appeals an order dated 22 November 2002 terminating parental rights over daughter B.S.D.S. (the child).

The child, born 14 August 1988, was fourteen years old at the time of the termination of parental rights proceeding and had previously been adjudicated neglected in 1994 and 1999. The 17 December 1999 order adjudicating the child neglected was based on the sexual abuse of the child by respondent's boyfriend. As a result of the sexual abuse, the child experienced emotional and behavioral problems, was diagnosed with major depression including psychotic features, and received therapy and psycho-educational classes. The trial court found there to be substantial evidence that respondent was "not capable of making the improvements necessary in order to appropriately care for the [child]" and ordered respondent to comply with the following terms: (1) attending all sessions of the SAIS non-offending

---

1. The caption has been altered to show only the minor child's initials.

spouse group, (2) ensuring the child received counseling, (3) not allowing anyone to consume drugs or alcohol in the home, (4) not allowing any males unrelated to her in the home, and (5) participating in any evaluations or treatment recommended by the Burke County Department of Social Services (DSS). The trial court continued custody with respondent.

In an order filed 23 March 2000, the trial court granted DSS custody of the child after finding that respondent had failed to comply with all of the terms of the 1999 neglect order. Specifically, the trial court found respondent had failed to comply "with her required attendance at the Foothills SAIS non-offending spouses group" and had violated the requirement that she not "allow any males to whom she was not related to reside in the home." The trial court instructed that in order for reunification to occur, respondent was to "show that she corrected those problems which led to the juvenile's removal." The trial court then ordered respondent to: (1) comply with the conditions previously set in orders by the trial court, (2) visit the child "under such conditions that the Department may impose," (3) submit to a psychological evaluation and any recommended treatment, (4) execute releases for the other parties to obtain information on her evaluation and treatment, (5) submit to random drug and alcohol testing, and (6) be able to present evidence to show that she was capable of caring for a child with special needs.

In a petition dated 22 May 2001, DSS sought the termination of respondent's parental rights over the child. The evidence at the termination of parental rights hearing revealed that respondent had missed several scheduled visitations and had encouraged the child to disobey the rules at the group home where the child lived. During a Christmas visit with the child in 2000, respondent upset the child by removing from the child clothes provided by the group home staff and making derogatory remarks about the staff. A DSS social worker further testified that respondent had failed to comply with the recommendation issued by the therapist who had evaluated respondent between August and September of 2000 that she seek therapy on a regular basis. The documentary evidence submitted at the hearing included a 15 February 2000 report by the child's therapist. The therapist observed that family life "elevat[ed the child's] barely manageable stress to unmanageable levels," that the child needed supervision and support from responsive adults, and that "progress [would] need to be made between [the child] and [respondent] in order for [the child] to feel safe at home." In a 16 February 2000 report, DSS also

**IN RE B.S.D.S.**

[163 N.C. App. 540 (2004)]

noted that respondent would "need much more therapy in order to properly parent her child[]."

Respondent testified she completed the SAIS non-offending spouse group in the winter of 2000. Respondent did not present any documentation in support of her successful completion of the sessions, and DSS was unaware that she had completed her sessions. Respondent admitted that, after her initial psychological evaluation in the fall of 2000, she had not seen a therapist until three weeks before the termination of parental rights hearing.

In an order dated 22 November 2002, the trial court found in pertinent part:

4. . . . [The child] has been in the custody of the Burke County Department of Social Services since February 24, 2000 . . . .

. . . .

6. The minor child was adjudicated to be neglected on December 2, 1999, this being the second such adjudication . . . . [Respondent's] testimony today indicates that she still has not grasped the effects of her behavior on the minor child. . . . Were the minor child returned to her mother's home, there is a substantial likelihood of the repetition of neglect.

7. Although [respondent] has made some sporadic progress in completing those things that the Court ordered her to do, she never fully cooperated with the Burke County Department of Social Services. She had from February[] 2000, when the minor child was removed from her home, to January[] 2001, when the Court terminated reunification efforts with her and made adoption the permanent plan for the minor child, to make reasonable progress or to show sufficient cooperation, but she failed to do so.

The trial court terminated respondent's parental rights on the grounds of neglect, *see* N.C.G.S. § 7B-1111(a)(1) (2003), and "willfully [leaving] the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile," N.C.G.S. § 7B-1111(a)(2) (2003).

The issues are whether: (I) the DSS petition was sufficient to invoke the trial court's subject matter jurisdiction and (II) the trial court's finding on respondent's lack of progress under N.C. Gen. Stat. § 7B-1111(a)(2) is supported by the evidence.

I

[1] Respondent first argues the trial court did not acquire subject matter jurisdiction because the petition to terminate parental rights failed to state that it had not been filed by DSS to circumvent the provisions of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA).

A petition to terminate parental rights shall state that it "has not been filed to circumvent the provisions of Article 2 of Chapter 50A of the General Statutes, the Uniform Child-Custody Jurisdiction and Enforcement Act." N.C.G.S. § 7B-1104(7) (2003); *In re Humphrey*, 156 N.C. App. 533, 538, 577 S.E.2d 421, 426 (2003). In the instant case, the petition stated: "This petition has not been filed to circumvent the provisions of Chapter 50A of the North Carolina General Statutes, the Uniform Child Custody Jurisdiction Act." By omitting the words "and Enforcement," the petition referenced the UCCJEA's predecessor, the UCCJA. *See In re Brode*, 151 N.C. App. 690, 692, 566 S.E.2d 858, 860 (2002).

Despite the inadvertent reference to the UCCJA, the petition stated the correct statutory chapter containing the UCCJEA—Chapter 50A. Moreover, the omission does not prompt the concern for circumvention expressed in section 7B-1104(7) because both acts share the same objectives with regard to child custody proceedings and determination. *See* Jennifer Marston, *Yesterday, Today, and Tomorrow's Approaches to Resolving Child Custody Jurisdiction in Oregon*, 80 Or. L. Rev. 301, 302-11 (2001) (the UCCJEA and the former UCCJA share the same purposes). Finally, respondent has not shown how she was prejudiced as a result of the petition's reference to the UCCJA instead of the UCCJEA. *See Humphrey*, 156 N.C. App. at 539, 577 S.E.2d at 426 (a respondent must demonstrate how she was prejudiced by the omission of the language required under section 7B-1104(7)). Therefore, this assignment of error is overruled.[2]

---

2. We note that the trial court in the case *sub judice* also made a similar omission in its order as the DSS petition. As we have held that the petition was not filed to circumvent the UCCJEA, we see no error. In addition, the requirement of section 7B-1104(7) focuses solely on the petition and not the trial court's order. *See* N.C.G.S. § 7B-1104(7).

**IN RE B.S.D.S.**

[163 N.C. App. 540 (2004)]

II

**[2]** We next address whether the trial court's finding on respondent's lack of progress under N.C. Gen. Stat. § 7B-1111(a)(2) was supported by the evidence.

Section 7B-1111(a)(2) provides for termination of parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2); *In re Pierce*, 356 N.C. 68, 75, 565 S.E.2d 81, 86 (2002) (the twelve-month period envisioned by the Legislature consists of the twelve months leading up to the filing of the petition for termination of parental rights). Willfulness under this section means something less than willful abandonment and does not require a finding of fault by the parent. *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). Willfulness may be found where a parent has made some attempt to regain custody of the child but has failed to exhibit "reasonable progress or a positive response toward the diligent efforts of DSS." *Id.* at 440, 473 S.E.2d at 398; *see In re Nolen*, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995) ("[i]mplicit in the meaning of positive response is that not only must positive efforts be made towards improving the situation, but that these efforts are obtaining or have obtained positive results"). This Court has held that "[e]xtremely limited progress is not reasonable progress." *Nolen*, 117 N.C. App. at 700, 453 S.E.2d at 224-25. This standard operates as a safeguard for children. If parents were not required to show both positive efforts and positive results, "a parent could forestall termination proceedings indefinitely by making sporadic efforts for that purpose." *Id.* at 700, 453 S.E.2d at 225.

In this case, the testimony and documentary evidence before the trial court established that respondent claimed to have completed her SAIS non-offending spouse group sessions in the winter of 2000. At the time of the termination hearing, however, DSS was not aware that respondent had completed her sessions, and respondent was unable to produce any documentary support for her contention. Assuming the trial court accepted respondent's testimony as credible, it still took respondent at least a year from the time of the initial 17 December 1999 order instructing her to attend the non-offending spouse group, and several court orders re-instructing her to comply

IN RE B.S.D.S.

[163 N.C. App. 540 (2004)]

with her obligation, before she finished her twelve required sessions. In addition, respondent was evaluated by a psychologist between August and September 2000 who recommended that she undergo therapy. By the time DSS filed its petition dated 22 May 2001 to terminate respondent's parental rights, respondent had not followed through on her obligation to seek therapy. In fact, respondent went to see a counselor only three weeks prior to the termination of parental rights hearing. Such a delayed effort has been deemed to be insufficient progress in *Oghenekevebe*, where this Court found the respondent had willfully left her child in foster care after failing to show any progress in her therapy until her parental rights were in jeopardy. *Oghenekevebe*, 123 N.C. App. at 437, 473 S.E.2d at 397. Finally, respondent's visitation with the child during the year prior to the filing of the termination of parental rights petition illustrates that she failed to exhibit appropriate parenting skills and, as a result, upset the child repeatedly. *See id.* at 440, 473 S.E.2d at 398 (a parent needs to exhibit "reasonable progress or a positive response toward the diligent efforts of DSS"); *Nolen*, 117 N.C. App. at 700, 453 S.E.2d at 225.

As a respondent's prolonged inability to improve her situation, despite some efforts in that direction, will support a finding of willfulness "regardless of her good intentions," there was sufficient evidence to support the trial court's finding of respondent's lack of progress during the year preceding the DSS petition to warrant termination of her parental rights under section 7B-1111(a)(2). *In re Bishop*, 92 N.C. App. 662, 669-70, 375 S.E.2d 676, 681 (1989) (holding the trial court's finding was supported by clear, cogent, and convincing evidence where "although respondent ha[d] made some progress in the areas of job and parenting skills, such progress ha[d] been extremely limited"); *see also In re Fletcher*, 148 N.C. App. 228, 235-36, 558 S.E.2d 498, 502 (2002) (upholding termination of parental rights order where "even though the respondent mother made some efforts, the evidence support[ed] the trial court's determination that she did not make sufficient progress in correcting conditions that led to the child's removal"). Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground of neglect found by the trial court. *See In re Swisher*, 74 N.C. App. 239, 240, 328 S.E.2d 33, 35 (1985) ("[i]f either of the[] grounds [for the termination of parental rights] is based upon findings of fact supported by clear, cogent and convincing evidence[,] ·the order appealed from should be affirmed").

Affirmed.

Judges CALABRIA and ELMORE concur.