GEER, Judge.
The respondent father E.A. appeals from an order terminating his parental rights as the father of C.T.A. and D.T.A. Based on our review of the record under the applicable standards of review, we affirm.
In August 2001, the Rutherford County Department of Social Services ("DSS") became involved with C.T.A. and D.T.A. when C.T.A. complained to a school nurse that his ear hurt and it was discovered that cockroaches had burrowed into both of the boy's ears. DSS filed two separate juvenile petitions, alleging that C.T.A. and D.T.A. were dependent and neglected. The juvenile petitions asserted that the mother had not been part of the children's lives for years and that respondent E.A. had left theminor children in the care of his elderly parents without adequate supervision and without providing financial assistance to maintain them. DSS' investigation had revealed that the grandparents' home, where the children had lived for nine months, was filled with roaches. DSS took C.T.A. and D.T.A. into custody in September 2001 and the trial court adjudicated the minor children dependent and neglected in January 2002.
The minor children remained in DSS' legal and physical custody until March 2002 when DSS returned C.T.A. and D.T.A. to the physical custody of their father in a trial placement. DSS took C.T.A. and D.T.A. back into physical custody in August 2002 following an allegation of domestic violence between respondent and his wife. In October 2003, DSS subsequently filed a petition to terminate the parental rights of both respondent and the minor children's mother, alleging, under N.C. Gen. Stat. § 7B-1111(a)(2) (2003), that each had willfully left the children in foster care for more than 12 months without reasonable progress under the circumstances in correcting those conditions that led to the removal of the children. On 15 February 2004, the trial court terminated respondent's parental rights based on the statutory ground set forth in N.C. Gen. Stat. § 7B-1111(a)(2). Respondent appeals from the orders terminating his parental rights to C.T.A. and D.T.A.[1]
A termination of parental rights proceeding is conducted intwo phases: (1) an adjudication phase that is governed by N.C. Gen. Stat. § 7B-1109 (2003) and (2) a disposition phase that is governed by N.C. Gen. Stat. § 7B-1110 (2003). In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). During the adjudication stage, petitioner has the burden of proving by clear, cogent, and convincing evidence that one or more of the statutory grounds for termination set forth in N.C. Gen. Stat. § 7B-1111 exist. The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law. In re Huff, 140 N.C. App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001).
If petitioner meets its burden of proving that grounds for termination exist, the trial court then moves to the disposition phase and must consider whether termination is in the best interests of the child. N.C. Gen. Stat. § 7B-1110(a). The trial court has discretion to terminate parental rights upon a finding that it would be in the best interests of the child to do so. Blackburn, 142 N.C. App. at 613, 543 S.E.2d at 910. The trial court's decision to terminate parental rights is reviewed under an abuse of discretion standard. In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001).
With respect to respondent, the trial court concluded that the following ground for termination of parental rights existed:
The parent has willfully left the juvenile in foster care or placement outside the home formore than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile.
N.C. Gen. Stat. § 7B-1111(a)(2). Respondent contends the trial court's conclusion is not supported by competent evidence or sufficient findings of fact. We find the evidence and findings sufficient to support the order terminating parental rights and affirm the decision of the trial court.
In this case, it is undisputed that the children were in foster care for more than 12 months prior to the filing of the petition. We must, however, also determine that there was clear, cogent, and convincing evidence that (1) respondent "willfully" left the juvenile in foster care for more than 12 months, and (2) that respondent failed to make "reasonable progress" in correcting the conditions that led to the children's removal from the home. In re Bishop, 92 N.C. App. 662, 667, 375 S.E.2d 676, 680 (1989).
"A finding of willfulness does not require a showing of fault by the parent." In re Oghenekevebe, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996). Instead, "willfulness" for the purposes of § 7B-1111(a)(2) is met when the parent has the ability to overcome his or her problems but nonetheless, over a significant period of time, fails to take steps to improve his or her situation. Bishop, 92 N.C. App. at 668, 375 S.E.2d at 680. A finding of willfulness "is not precluded just because respondent has made some efforts to regain custody of the child." Oghenekevebe, 123 N.C. App. at 440, 473 S.E.2d at 398. In support of its conclusion that grounds existed under N.C. Gen. Stat. § 7B-1111(a)(2) to terminate respondent's parental rights, the trial court made the following pertinent findings of fact:[2]
(7) This child has now been in the custody of the Rutherford County Department of Social Services for longer than two years. Since mid August 2002 the child has been in the actual care and supervision of the Department of Social Services following an unsuccessful experiment in returning the child to the care of his father.
. . . .
As to the father, he has accomplished numerous perfunctory things while his child has been in custody of the Rutherford County Department of Social Services such as completing anger management. On the other hand, from August 2002 when the child was removed from the father's physical custody following an unsuccessful trial home visit until the date of hearing the father only scheduled visitation on February 11, 2003, March 18, 2003, April 22, 2003, May 20, 2003, June 30, 2003 and December 11, 2003. The father for reasons never provided to the child or social workers failed to appear for the June 30, 2003 visit. He has been very evasive about where he has been residing since his return to Rutherford County in 2002. Notably the father's performance has been totally lacking in the area of providing monetary support for his child, despite ample evidence that he has had employment and can readily obtain new employment when for whatever reason his prior employment is terminated.
This child was initially placed into foster care because of incredible filth in the home of his paternal grandparents where he was residing at the time. The home was roach-infested to the extent that the child required medical treatment to remove a bug from inside his ear canal. The child's condition was discovered by school personnel and not by the parents or the grandparents.
Although the father of this child obtained appropriate housing nearly immediately after Rutherford County DSS assumed custody, he has since lost that housing on account of a dispute with his wife which involved acts of domestic violence. For the past year the father has not maintained a residence suitable for the care and custody of his child. He has been at best vague and at worst elusive as to where he has been residing when questioned by social workers and the guardian ad litem. Neither the social worker nor the guardian ad litem have been able to visit in any residence where they could confirm that the father was residing since the child was returned to the physical custody of Rutherford County DSS nearly one year ago despite numerous requests for the location of the father's residence and for home visits.
As to each parent grounds for termination of parental rights as alleged in the motion in the cause has been proven to exist. As to the mother there is absolutely no reason not to terminate her rights. As to the father, while the Court sees some benefit in terminating parental rights, there appears to be no benefit in the father retaining parental rights. His involvement in the past year has been no greater than had he passed away a year ago. He has not provided any benefit, tangible or intangible, to this child for nearly a year.
(8) The mother and father have therefore willfully left the child in foster care for more than 12 months without reasonable progress under the circumstances in correcting those conditions which led to the removal of the child.
(9) There does not appear to be any reason why it would not be in the best interests of the named juvenile that the parental rights of both parents be terminated. To the contrary, it affirmatively appears thatit is in the best interests of the named juvenile that the rights of his parents be terminated. The mother has had no contact with the juvenile for a number of years after having abandoned him. The father initially showed some parenting skill, but for the past year or longer has been more a source of disappointment than a benefit to the child. He has visited only rarely. He misses visits that have been scheduled thereby upsetting the child. He makes promises which he does not fulfill, such as promises of expensive gifts for the child. All these acts of the father have a disruptive effect upon the child and are not in his continued best interest.
Respondent has not specifically assigned error to any of these findings of fact, and they are, therefore, presumed to be correct and supported by the evidence. In re Padgett, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003).
In any event, a review of the record and transcript shows that each of the trial court's findings are based upon orders entered in the case and testimony from a DSS social worker and the guardian ad litem. The social worker testified that respondent signed a case plan and initially made progress towards accomplishing the goals of the case plan by completing marital counseling, completing parenting classes, visiting with the children, and obtaining adequate housing for the children. The social worker also testified that the children were placed in a trial placement with respondent, but were returned to DSS in August 2002 after respondent and his wife had a domestic argument. The social worker further testified that once the children were returned to DSS, respondent did not speak with the social worker until January 2003. Since that time, respondent's visits became sporadic and DSS hasbeen unable to establish respondent's living arrangements. The guardian ad litem testified that respondent had not regularly visited with the children since they were returned to DSS in August 2002 and that she could not confirm where respondent was living. She further testified that although respondent told the children that they would have "computers and games and videos" if they lived with him, she has not "found anything that substantiates what he says" and that respondent's promises caused the children to become "troublesome."
We conclude that the trial court's findings of fact were based on clear, cogent, and convincing evidence and, based on those findings, that the trial court properly determined that respondent had left the minor children in foster care for 12 months without reasonable progress. We further hold that these findings support the court's conclusion that respondent was subject to having his parental rights terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). Our courts have held "that extremely limited progress is not reasonable progress. This standard operates as a safeguard for children. If parents were not required to show both positive efforts and positive results, a parent could forestall termination proceedings indefinitely by making sporadic efforts for that purpose." In re B.S.D.S., 163 N.C. App. 540, 545, 594 S.E.2d 89, 93 (2004) (internal citations and quotation marks omitted). See also In re Nolen, 117 N.C. App. 693, 700, 453 S.E.2d 220, 225 (1995) ("Implicit in the meaning of positive response is that not only must positive efforts be made towards improving the situation,but that these efforts are obtaining or have obtained positive results.").
Further, based on the court's findings regarding respondent's limited visitation and contact with his sons since their return to DSS custody and the lack of any indication that he has or will obtain a residence suitable for the children, we cannot find any abuse of discretion in the trial court's decision that termination of parental rights was in the children's best interests. Accordingly, the order entered by the trial court is affirmed.
Affirmed.
Judges BRYANT and ELMORE concur.
Report per Rule 30(e).

The trial court also terminated the parental rights of the mother, who has not appealed.

The court entered separate decisions for each child. This quotation comes from the decision relating to C.T.A. The decision relating to D.T.A. contains similar findings of fact.