IN THE MATTER OF: K.P.M. F.B.B., JR. N.A.B.
No. COA09-340
Court of Appeals of North Carolina.
Filed: July 7, 2009.
J. Suzanne Smith for petitioner-appellee Buncombe County Department of Social Services.
Michael N. Tousey for appellee guardian ad litem.
Janet K. Ledbetter for respondent-appellant-mother.
Don Willey for respondent-appellant-father.
HUNTER, Robert C. Judge.
S.A.D. (respondent-mother) of K.P.M., F.B.B., Jr., and N.A.B. and F.B.B., Sr. (respondent-father) of F.B.B., Jr. and N.A.B. (collectively respondents) appeal from judgments terminating their parental rights to their children. After careful review, we affirm.
On 20 September 2006, the Buncombe County Department of Social Services (DSS) received a child protective services report alleging that F.B.B., Jr. was born testing positive for cocaine. A social worker visited the home of the parents on 21 September 2006. Respondent-mother was present with F.B.B., Jr. and his eleven-month old sibling, K.P.M. Respondent-mother denied using drugs and asserted that the positive test was a mistake by the hospital. The social worker also visited respondent-father at his job site. Respondent-father stated he had never seen respondent-mother use drugs. He admitted he smoked marijuana and used cocaine, but stated he never did so around the children.
On 19 February 2007, another social worker made an unannounced visit to respondents' home because respondent-mother failed to attend a substance abuse assessment that day. The social worker found respondents at home with the two children. The social worker observed two beer cans in the home, and two other adults who were under the influence of an impairing substance. Respondent-mother made several random statements, and appeared to be under the influence of an impairing substance. Respondent-father told the social worker it was his fault that respondent-mother had used cocaine during her pregnancy with F.B.B., Jr. Respondent-mother stated she thought the cocaine had induced labor. While the social worker was in the home, she saw one of the other adults leave through a back door. Later that night, EMS responded to a call that an adult female, not respondent-mother, was found unconscious in F.B.B., Jr.'s bedroom. No sober caretakers of the children were present in the home. Respondents refused to identify a kinship placement for the children, and on 20 February 2007, an order was entered awarding nonsecure custody of the children to DSS.
On 20 February 2007, a social worker met with the parents at the DSS office. Respondent-father admitted he used cocaine and marijuana, but claimed it had no impact on the children. Respondent-father also stated it took DSS five months "to catch him drinking."
On 22 February 2007, both children underwent hair follicle drug tests. The results came back on 28 February 2007, indicating the children tested positive for benzolylecgonine, cocaine, and marijuana. A positive hair follicle test indicates that the subject ingested the substance, either orally or through inhalation. Respondent-mother subsequently tested positive for ingestion of cocaine and marijuana. Prior to the testing, respondent-mother admitted she had used illegal substances within the previous two weeks, and that she might test positive.
On 26 March 2007, the children were adjudicated as abused, neglected, and dependent. Respondent-mother was ordered to complete a twelve-week program about marijuana awareness, participate in substance abuse treatment through the Women's Recovery Center, complete a mental health assessment and a psychological evaluation. Respondent-father was ordered to complete a substance abuse assessment and comply with recommendations, complete an intensive 90-hour outpatient treatment program, and complete a psychological evaluation. Respondent-father completed the 90-day program in late July 2007. He celebrated completion of the program by using cocaine.
In the summer of 2007, respondent-mother gave birth to a third child, N.A.B. Respondents were allowed to take N.A.B. home from the hospital, pending receipt of meconium test results. On 3 August 2007, DSS received the results indicating that N.A.B. had tested positive for cocaine. On 7 August 2007, respondents completed hair follicle drug screens, and both tested positive for cocaine.
Respondents also participated in an intensive family visitation program. Respondent-mother stated to the social worker in charge of the program that she had never used drugs even though the third and youngest child at issue, N.A.B., tested positive for cocaine at birth, and she had told another person at Women's Recovery that she had used cocaine four days before F.B.B., Jr. was born. Respondents also falsely reported that the father of the oldest child, K.P.M., was dead. Neither respondent-mother nor respondent-father completed the intensive family visitation program.
In February 2007, respondent-mother completed a substance abuse assessment. Respondent-mother made appointments with Women's Recovery but failed to keep the appointments. Respondent-mother never completed a mental health assessment or a re-evaluation for substance abuse. Respondent-mother never completed treatment at Women's Recovery because she was arrested on 23 August 2007 and was extradited to Florida on criminal charges. Respondent-mother is incarcerated in the Florida penal system and her projected release date is April 2010.
In October 2007, respondent-father admitted to a social worker that he had relapsed and had started using cocaine again. Respondent-father resumed attendance of a substance abuse program. Respondent-father completed the second program in April 2008, but failed to attend the thirty-eight weeks of aftercare. The program required participants to abstain from use of any controlled substance, including alcohol. Father refused to abstain from drinking alcohol. On 6 June 2008, respondent-father failed to submit to a drug screen. Respondent-father was terminated from the program.
On 12 March 2008, DSS filed petitions to terminate the parental rights of respondents. The trial court conducted hearings on 23, 24 and 25 September 2008, and on 10 November 2008. The trial court concluded as grounds for terminating respondents' parental rights that: (1) respondents neglected the children and there was a strong likelihood of repetition of neglect; (2) respondents willfully left the children in foster care outside the home for more than twelve months without showing to the satisfaction of the trial court that reasonable progress under the circumstances had been made in correcting those conditions which led to the removal of the children; and (3) respondents were incapable of providing proper care, and there was a reasonable probability that such incapability would continue for the foreseeable future. As an additional basis for terminating respondent-father's parental rights, the trial court concluded that respondent-father had not legitimated the children or provided substantial financial support or consistent care with respect to the children and respondent-mother. The trial court further concluded that it was in the best interests of the children that the parental rights of respondents be terminated.
A proceeding to terminate parental rights consists of an adjudication stage and a disposition stage. In re Montgomery, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). During the adjudication phase, the petitioner must show by clear, cogent, and convincing evidence the existence of a statutory ground authorizing the termination of parental rights. In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997). "Upon determining that one or more of the grounds for terminating parental rights exist, the court moves to the disposition stage to determine whether it is in the best interests of the child to terminate the parental rights." Id. at 247, 485 S.E.2d at 615. In reviewing an order terminating parental rights, the appellate court is bound by the trial judge's findings of fact "where there is some evidence to support those findings, even though the evidence might sustain findings to the contrary." Montgomery, 311 N.C. at 110-111, 316 S.E.2d at 252-53. "A finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. 7B-1111 is sufficient to support a termination." In re Humphrey, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003).
Respondent-mother contends that the trial court's conclusion that grounds existed to support termination of parental rights was not supported by clear, cogent and convincing evidence. Respondent-father does not dispute the conclusion that grounds existed to terminate his parental rights. Respondent-father contends that the trial court erred in concluding that it was in the best interests of the children that his parental rights be terminated.
We first address respondent-mother's contention that the trial court erred in concluding that three grounds existed to terminate respondent-mother's rights. We first consider the ground of neglect. One of the statutorily enumerated grounds for termination of parental rights is that the parent has abused or neglected the juvenile. N.C. Gen. Stat. § 7B-1111(a)(1) (2007). A neglected juvenile is defined by N.C. Gen. Stat. § 7B-101(15) as one
who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law. In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home.
N.C. Gen. Stat. § 7B-101(15) (2007). To terminate parental rights on the ground of neglect, there must be clear, cogent, and convincing evidence that (1) the juvenile is neglected within the meaning of N.C.G.S. 7B-101(15), and (2) "the juvenile has sustained `some physical, mental, or emotional impairment . . . or [there is] a substantial risk of such impairment'" as a consequence of the neglect. In re Reyes, 136 N.C. App. 812, 815, 526 S.E.2d 499, 501 (2000) (quoting In re Safriet, 112 N.C. App. 747, 752, 436 S.E.2d 898, 901-02 (1993)). In determining whether a juvenile is neglected, the trial court may consider evidence of neglect prior to removal of a child from custody, and "must also consider any evidence of changed conditions in light of the evidence of prior neglect and the probability of a repetition of neglect." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). When a child has been absent from the parent's home for a period of time next preceding the termination hearing, "the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999). Conduct which may support a determination that a child is neglected includes alcohol or substance abuse by the parent or physical abuse or injury to a child inflicted by the parent. In re Stumbo, 357 N.C. 279, 283-84, 582 S.E.2d 255, 258-59 (2003).
Respondent-mother argues DSS did not present any evidence, and the trial court did not make any findings of fact, concerning the likelihood of repetition of neglect should the children be returned to respondent-mother's care when her incarceration ends in 2010. We disagree. Although a mixed finding of fact and conclusion of law, the trial court did make a finding of fact in each judgment that there was a high likelihood of a repetition of the neglect if the children were returned to respondent-mother's home. The finding is supported by the evidence, which shows respondent-mother has a long history of substance abuse and of exposing the children to cocaine and marijuana. Respondent-mother consumed cocaine while pregnant with N.A.B., even after her other two children had been removed from the home due to her abuse of controlled substances. All three children have tested positive for cocaine, an impairing substance which has a negative effect on the brain and nervous system. A child that has been exposed to cocaine must be closely monitored for developmental disabilities. Respondent-mother's failure to complete the substance abuse treatment program as part of the plan to be reunified with the children, and her continued consumption of cocaine and marijuana in the presence of the children suggest there is a strong likelihood respondent-mother will continue to abuse cocaine and alcohol in the future and subject the children to the risk of further impairment.
We affirm the trial court's decision to terminate respondent-mother's parental rights on the ground of neglect. Having upheld the determination of one ground to terminate respondent-mother's parental rights, we need not consider the other two grounds. In re B.S.D.S., 163 N.C. App. 540, 546, 594 S.E.2d 89, 93-94 (2004).
The next question is whether the trial court erred by finding and concluding that it was in the best interests of the children that respondent-father's parental rights be terminated. If the trial court finds the existence of grounds to terminate parental rights, then it must next determine whether terminating a parent's rights is in the juvenile's best interest. N.C. Gen. Stat. § 7B1-110(a).
In making this determination, the court shall consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
Id. "The decision to terminate parental rights is vested within the sound discretion of the trial [court] and will not be overturned on appeal absent a showing that the [trial court's] actions were manifestly unsupported by reason." In re J.A.A. & S.A.A., 175 N.C. App. 66, 75, 623 S.E.2d 45, 51 (2005).
The trial court's findings of fact arising out of the dispositional hearing show the following: Respondent-father's two children were ages two and one. Neither child had a bond with respondent-father. The younger child had never resided with respondent-father, and respondent-father had missed approximately half of his scheduled visits with the children. He last visited in March 2008. The older child was afraid of respondent-father and cried during visits. Respondent-father acknowledged that he did not know the birthdays of the children. The permanent plan for the children was adoption. Both children were residing with the same foster parents, with whom they had a very strong bond. The foster parents desired to adopt the two children and the likelihood of adoption was high. The home of the foster parents was the only home the two children had known.
We conclude the findings of fact are sufficient to show the trial court considered the factors listed in the statute. We overrule respondent-father's contention.
The judgments terminating the parental rights of respondents are
Affirmed.
Chief Judge MARTIN and Judge ELMORE concur.
Report per Rule 30(e).