STROUD, Judge.
Respondent, the father of the juvenile A.M.D. ("Ada")[1] , appeals from an order terminating his parental rights. After careful review, we affirm.
I. Background
On 4 August 2014, when Ada was 11 days old, Caldwell County Department of Social Services ("DSS") filed a petition alleging that she was a neglected and dependent juvenile due to domestic violence in her home. DSS first became involved with respondent's family prior to Ada's birth. On 28 April 2014, Ada's older siblings M.D. and A.D. ("Michelle" and "Allie") reported that respondent hit them with a belt. Michelle also reported that respondent hit Ada's mother ("Sara") in the face, causing her to bleed. On 11 June 2014, Michelle and Allie reported again seeing respondent hit Sara in the face and that their sibling J.D. ("Jane") was present when this incident occurred.[2] Michelle and Allie further reported that respondent had locked Sara in a closet and that Sara had thrown a knife at respondent after he hit her. Both Michelle and Allie stated that they were afraid to go to respondent's home because of the fighting. On 18 June 2014, Allie reported that respondent made her pull down her pants and "whooped her with a belt[,]" leaving visible bruising. Respondent later admitted to spanking Allie with a belt on two separate occasions. On 30 July 2014, Allie disclosed that respondent had struck her in the mouth, which caused her to bleed from her nose and to cough up blood. Subsequently, a physical altercation occurred between respondent and Sara, after which Sara had scratches on her arm and respondent had a black eye. Michelle and Allie disclosed to social workers that they were told they would be "whooped if they told anyone about this incident."
On 1 August 2014, social workers met with respondent about his lack of compliance with services. Social workers informed respondent he was not to have "face to face contact with his children[.]" Social workers further informed respondent that they would be filing a petition concerning the juveniles. Respondent "became enraged and began to clinch his jaw, shake, become red faced, and eventually stormed out of the room." Respondent yelled at social workers and told them "he would not comply with anything[.]" Respondent then "screamed obscenities from the elevator" as he left. DSS obtained non-secure custody of Ada.
On 22 September 2014, the court adjudicated Ada a dependent juvenile, based on stipulations made by the parties. Ada was placed in the home of her maternal grandparents. The court declined to grant respondent visitation. The court ordered respondent to comply with a case plan, which included: (1) completion of a domestic violence assessment and compliance with all recommendations; (2) "honest" communication with DSS; (3) active participation and completion of parenting classes and compliance with all recommendations; (4) completion of a comprehensive clinical assessment and compliance with all recommendations; (5) that respondent not use or possess illegal drugs or non-prescribed controlled substances; and (6) submission to random drug screenings.
On 15 May 2015, the trial court ceased reunification efforts after finding that respondent had failed to address his substance abuse issues and had not completed domestic violence counseling. On 24 July 2015, the trial court changed the permanent plan for Ada to adoption. On 4 April 2016, DSS moved to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(1) (neglect), (2) (failure to make reasonable progress), (3) (failure to pay support), and (6) (dependency) (2015).[3] On 15 June 2016, the trial court terminated respondent's parental rights pursuant to the grounds alleged in the motion. Respondent appeals.
II. Grounds to Terminate
Respondent argues that the trial court erred by concluding that grounds existed to terminate his parental rights. We disagree.
N.C. Gen. Stat. § 7B-1111 (2015) sets out the statutory grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support termination. In re Taylor , 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D. , 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005). We review the trial court's conclusions of law de novo. In re S.N. , 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), aff'd per curiam , 363 N.C. 368, 677 S.E.2d 455 (2009).
In the instant case, the trial court concluded that grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2). To terminate a parent's rights under N.C. Gen. Stat. § 7B-1111(a)(2) :
the trial court must perform a two-part analysis. The trial court must determine by clear, cogent and convincing evidence that [ (1) ] a child has been willfully left by the parent in foster care or placement outside the home for over twelve months, and ... [ (2) ] the parent has not made reasonable progress under the circumstances to correct the conditions which led to the removal of the child.
In re O.C. , 171 N.C. App. 457, 464-65, 615 S.E.2d 391, 396 (2005).
Here, in support of its conclusion that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate respondent's parental rights, the trial court found as fact:
2. The direct circumstances which brought the juvenile into the care of [DSS] were that there was domestic violence between the Respondent father and [Sara]; the Respondent father had engaged in inappropriate discipline of older siblings of the minor child and the Respondent father refused to cooperate with [DSS] to assure the safety of the minor child.
....
4. The Court has taken judicial notice of the prior orders in the file which are incorporated herein by reference as authorized by the North Carolina Court of Appeals.
5. The minor child was placed into the custody of [DSS] on August 4, 2014. The custody of the minor child has continued with [DSS] since that date and she remains in such custody as of the hearing on the Motion filed April 4, 2016.
....
8. The Respondent father entered into a case plan with [DSS] which required him to have a comprehensive clinical assessment and follow any recommendations for treatment. He had the assessment and received certain diagnoses and a recommendation for treatment. He has not participated in the recommended treatment. He was required to have a substance abuse assessment which he completed on August 23, 2014. It also recommended treatment and participation in Narcotics Anonymous. He has not participated in the recommended Intensive Outpatient treatment and he has not participated in Narcotics Anonymous. The Respondent father was required to submit to random drug tests. He submitted to five tests which were positive for marijuana and/or methamphetamine. The Respondent father was required to have a domestic violence assessment and comply with any recommendations. He had the assessment on September 10, 2014, but he never enrolled in the recommended treatment.... The Respondent father was required to participate in parenting classes. He completed parenting classes in November, 2014 but he has been unable to demonstrate any skills learned during those classes. He has taken very few steps to meet the needs of the minor child for a safe, stable, appropriate home.... The Respondent father has not visited with the minor child since November, 2015....
9. Such services as might be required to assist the Respondent father in meeting the needs of the minor child were available and the social worker made referrals for services but the Respondent father was inconsistent in utilizing those services. He undertook very few steps to address the issues that caused the minor child to be removed from her home.
10. The juvenile has been in the custody of [DSS] since August 4, 2014. The Respondent father was offered visitation with the minor child but he has not visited with the minor child since November, 2015. Prior to that time he was inconsistent with his visitations....
11. The juvenile has been in the custody of [DSS] and in an out of home placement since August 4, 2014. The Respondent father participated in some of the services directed by the Court but he did not complete most of the services and did not comply with the orders of the Court. He was unable to demonstrate any knowledge acquired or skills learned such that he could appropriately parent his child.
Respondent challenges portions of several of the trial court's findings of fact. We are bound by those findings not challenged by respondent on appeal. See Koufman v. Koufman , 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (unchallenged findings are deemed supported by competent evidence and are binding on appeal). Moreover, we review only those findings necessary to support the trial court's determination that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to terminate respondent's parental rights. See In re T.M. , 180 N.C. App. 539, 547, 638 S.E.2d 236, 240 (2006) (erroneous findings that are unnecessary to support adjudication of neglect do not constitute reversible error).
Respondent first challenges a portion of Finding of Fact No. 8 that states he failed to comply with the recommendations made in his comprehensive clinical assessment. Lina Draughn, a DSS social worker, testified that respondent completed his clinical assessment on 23 August 2014. The assessment recommended that respondent complete a domestic violence assessment and attend any groups; attend a parenting class; and attend outpatient substance abuse treatment. Ms. Draughn initially testified that respondent did not comply with those recommendations. Ms. Draughn subsequently testified, however, that respondent: (1) completed parenting classes in November 2014; and (2) participated in a domestic violence assessment, but failed to attend any of the recommended classes.
We note that the record also demonstrates that respondent attended some counseling sessions offered through an employer and a handful of substance abuse classes. Thus, it is apparent from the record that respondent participated in some of the services recommended by the comprehensive clinical assessment. But respondent's case plan required him to complete the assessment and follow "any" recommendations for treatment. The record contains uncontradicted evidence that respondent did not complete substance abuse or domestic violence counseling. Thus, while respondent may have participated in some of the services, the record demonstrates that he did not fully comply with the recommendations of the assessment. Therefore, we conclude that the trial court's finding was supported by competent evidence.
Respondent further challenges the trial court's finding in Finding of Fact No. 11 that he was "unable to demonstrate any knowledge acquired or skills learned such that he could appropriately parent his child." Respondent argues that the trial court would be correct in finding that following his completion of parenting classes, DSS has not observed him demonstrating the knowledge or skills he learned. Respondent asserts, however, that the evidence does not support a finding that he is unable to demonstrate any such knowledge or skills. Yet Ms. Draughn specifically testified that respondent completed parenting classes but was not able to demonstrate the knowledge or skills learned in these classes. Only the trial court can determine the weight and credibility of Ms. Draughn's testimony, and the trial court found her testimony to be credible.
Moreover, we note that respondent does not challenge the portion of Finding of Fact No. 10 relating to his failure to engage in visitation. If Respondent had exercised his visitation, he would have had the opportunity to demonstrate his skills or knowledge learned in parenting classes. He cannot now complain that he did not have the opportunity to demonstrate what he had learned. Therefore, we conclude the trial court's finding of fact was supported by the record. See In re Whisnant , 71 N.C. App. 439, 441, 322 S.E.2d 434, 435 (1984) (It is the trial judge's duty to "weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom.").
Respondent contends that there was insufficient competent evidence and findings of fact to support the trial court's conclusion that he failed to make reasonable progress. We disagree. This juvenile was removed from respondent's home primarily due to domestic violence and inappropriate discipline. Respondent was provided with a case plan to address these issues; a case plan which required him to complete parenting classes, as well domestic violence and substance abuse counseling. While respondent engaged in some services, he failed to adequately complete these services and fully address the issues which led to the removal of the juvenile. This Court has repeatedly emphasized that "[e]xtremely limited progress is not reasonable progress. This standard operates as a safeguard for children. If parents were not required to show both positive efforts and positive results, a parent could forestall termination proceedings indefinitely by making sporadic efforts for that purpose." In re B.S.D.S. , 163 N.C. App. 540, 545, 594 S.E.2d 89, 93 (2004) (citations and quotation marks omitted). Accordingly, we hold that the trial court did not err in concluding that grounds existed to terminate respondent's parental rights pursuant to N.C. Gen. Stat. § 7B-1111(a)(2).
Respondent additionally argues that the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (3), and (6) to terminate his parental rights. However, because we conclude that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(2) to support the trial court's order, we need not address the remaining grounds found by the trial court to support termination. Taylor , 97 N.C. App. at 64, 387 S.E.2d at 233-34. Accordingly, we affirm.
AFFIRMED.
Report per Rule 30(e).
Chief Judge McGEE and Judge McCULLOUGH concur.

Pseudonyms are used to protect the identities of the juveniles and Ada's mom and to promote ease of reading.

Neither Michelle, Allie nor Jane are the subject of this appeal and none of the juveniles' mothers are a party to this appeal.

Sara relinquished her parental rights prior to the termination hearing.