IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-261

Filed: 5 May 2020

Guilford County, No. 15JT 108

IN THE MATTER OF: N.N.B.

Appeal by respondent from order entered on or about 6 November 2018 by Judge Tonia A. Cutchin in District Court, Guilford County. Heard in the Court of Appeals 18 February 2020.

*Mercedes O. Chut, for petitioner-appellee Guilford County Department of Health and Human Services.*

*David A. Perez for respondent-appellant father.*

*Parker Poe Adams & Bernstein LLP, by Lisa Sperber, for guardian ad litem.*

STROUD, Judge.

Respondent appeals termination of his parental rights. Because the evidence supports the trial court's finding of fact that respondent lacks an appropriate alternative child care arrangement, it did not err by concluding that Neal is a dependent juvenile or by terminating respondent's parental rights on this basis. We affirm.

I.     Background

On 30 May 2017, the Guilford County Department of Health and Human Services ("DHHS") filed a petition alleging that Neal,[1] age 11 at the time of the petition, was a neglected and dependent juvenile. The allegations in the petition focus on Neal's mental health issues exhibited in his problematic behaviors which include suicidal ideations, harming animals, and starting fires. This appeal concerns only Neal's father, respondent, as Neal's mother relinquished her parental rights in 2018.

Respondent is incarcerated serving a term of 461 years for rape, burglary, and other crimes. Respondent has not seen Neal since 2012 even though he was not incarcerated until 2014. Ultimately, respondent's rights were terminated based on failure to properly establish paternity, failure to provide proper care and supervision, and abandonment. Respondent appeals.

## II. Failure to Provide Proper Care and Supervision

Respondent challenges each ground of termination.

> A proceeding to terminate parental rights is a two step process with an adjudicatory stage and a dispositional stage. A different standard of review applies to each stage. In the adjudicatory stage, the burden is on the petitioner to prove by clear, cogent, and convincing evidence that one of the grounds for termination of parental rights set forth in N.C. Gen. Stat. § 7B–1111(a) exists. The standard for appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether those findings of fact support its conclusions

---

[1] We have used a pseudonym to protect the identity of the juvenile.

of law. Clear, cogent, and convincing describes an evidentiary standard stricter than a preponderance of the evidence, but less stringent than proof beyond a reasonable doubt.

If the petitioner meets its burden of proving at least one ground for termination of parental rights exists under N.C. Gen. Stat. § 7B–1111(a), the court proceeds to the dispositional phase and determines whether termination of parental rights is in the best interests of the child. The standard of review of the dispositional stage is whether the trial court abused its discretion in terminating parental rights.

*In re D.R.B.*, 182 N.C. App. 733, 735, 643 S.E.2d 77, 79 (2007). "Unchallenged findings are binding on appeal." *In re C.B.*, 245 N.C. App. 197, 199, 783 S.E.2d 206, 208 (2016).

North Carolina General Statute § 7B-1111 provides,

> (a) The court may terminate the parental rights upon a finding of one or more of the following:
> > (6) That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that the incapability will continue for the foreseeable future. Incapability under this subdivision may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement.

N.C. Gen. Stat. § 7B-1111 (2017).

> A dependent child is defined as a juvenile in need of assistance or placement because the juvenile's parent, guardian, or custodian is unable to provide for the care or supervision and lacks an appropriate alternative child care arrangement. Under this definition, the trial court must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements.

*In re P.M.*, 169 N.C. App. 423, 427, 610 S.E.2d 403, 406 (2005) (citation, quotation marks, ellipses, and brackets omitted).

Here, respondent concedes that due to his lengthy incarceration he cannot provide care or supervision but contends that he proposed two relative placements – his mother and sister. Respondent contends "[t]he real issue before this Court is whether . . . [he] lacked an 'appropriate alternative child care arrangement.'" Respondent also does not challenge the trial court's findings of fact regarding his mother and sister. Respondent's mother "when contacted . . . stated she had failing health and was residing in a retirement community that did not allow children." The trial court found respondent's sister was not a "viable" option as Neal had been in level IV psychiatric treatment and had been moved to a level III group home. DHHS determined, and the trial court found, that no relative placement would be appropriate at this time because of the level of care Neal requires. Again, respondent does not challenge these findings of fact as unsupported by the evidence but contends

"[t]his matter is unusual in that no relative placement could have been considered immediately appropriate as of the termination hearing."

Respondent notes his sister had been Neal's primary caregiver from his birth until 2008, when she moved to Georgia. Because respondent's sister lived in Georgia, an Interstate Compact on the Placement of Children ("ICPC") home study was required before Neal could be placed in her home. DHHS completed an ICPC Case Manager Statement of Interest form for respondent's sister and allowed her to have weekly telephone contact with Neal, continuing up to the time of the termination hearing. Respondent further explains that the trial court had also ordered DHHS to initiate the ICPC home study for his sister. But at that time, Neal was placed in Level IV Psychiatric Residential Treatment Facility ("PRTF"). When DHHS contacted the ICPC office, they asked that DHHS first determine the discharge plan for Neal from the PRTF. The PRTF recommended that Neal transition to a Level III group home and did not recommend placement with a relative because of Neal's substantial needs for psychiatric care. DHHS then suspended its plan to place Neal with respondent's sister, although DHHS still had plans to submit the ICPC request if a relative placement was ever deemed appropriate for Neal. Thus, respondent argues that he offered his sister as an appropriate child care arrangement but he was not allowed to have "any input or involvement whatsoever in the decision to transition Neal from a PRTF to a Level III group home." Respondent contends that even if he

had not been incarcerated, "there is no reason to believe he would have had any more actual involvement as to the placement of his child in a level III group than he had while incarcerated."

Respondent cites to *In re C.B.*, where the child's mother did not propose appropriate child care alternatives and was uncooperative with DSS's attempts to provide mental health services for the child. 245 N.C. App. at 211, 783 S.E.2d at 216. But *C.B.* is inapposite to this case. *See id.*, 245 N.C. App. 197, 783 S.E.2d 206.

In *C.B.*, the child suffered from severe mental health problems which resulted in "aggressive, assaultive, dangerous behaviors[.]" *Id.* at 203, 783 S.E.2d at 211. The child had been hospitalized several times, but the mother minimized the problem and claimed the child just had "seizures" although there was no evidence of any seizure disorder. *Id.* at 205, 783 S.E.2d at 212. The mother repeatedly refused to participate in intensive in-home treatment for the child because she believed she could handle the child on her own. *See id.* In *C.B.*, the mother challenged the trial court's findings of the severity of the child's mental needs and contended she was able to care for the child properly herself. *See id.* at 206, 783 S.E.2d at 212.

Respondent does not challenge the trial court's findings regarding Neal's serious mental health issues or need for a Level III placement. Respondent contends only that his sister is an "appropriate" placement in that she is available and willing and has a close relationship with Neal. But respondent's sister is not an "appropriate"

placement for Neal because of his psychiatric needs. Respondent's sister may well be an "appropriate" placement for a child who does not require such a high level of care, but not for Neal.

Accordingly, the trial court did not err in concluding that Neal is a dependent juvenile and that respondent's rights should be terminated under North Carolina General Statute § 7B-1111(a)(6). This argument is overruled. As we have found one ground for termination, we need not address the others. *See In re B.S.D.S.*, 163 N.C. App. 540, 546, 594 S.E.2d 89, 93–94 (2004) ("Having concluded that at least one ground for termination of parental rights existed, we need not address the additional ground[s] . . . found by the trial court.").

### III.    Conclusion

For the foregoing reasons, we affirm.

AFFIRMED.

Judges INMAN and YOUNG concur.