IN THE SUPREME COURT OF NORTH CAROLINA

No. 476A19

Filed 25 September 2020

IN THE MATTER OF: Z.K.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 3 October 2019 by Judge Susan M. Dotson-Smith in District Court, Buncombe County. This matter was calendared for argument in the Supreme Court on 27 August 2020 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee Buncombe County Department of Health and Human Services.*

*Amanda S. Hawkins for appellee Guardian ad Litem.*

*Peter Wood for respondent-appellant mother.*

EARLS, Justice.

Respondent-mother appeals from the trial court's 3 October 2019 order terminating her parental rights to the minor child Z.K. (Zena).[1] Counsel for respondent-mother has filed a no-merit brief pursuant to Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. We conclude the issues identified by

---

[1] The minor child Z.K. will be referred to throughout this opinion as "Zena," which is a pseudonym used to protect the identity of the juvenile and for ease of reading.

counsel in respondent-mother's brief are without merit and therefore affirm the trial court's termination order.

On 11 June 2017, the Buncombe County Department of Health and Human Services (DHHS) received a Child Protective Services (CPS) report concerning Zena. The report alleged that while respondent-mother and Zena were visiting respondent-mother's boyfriend M.K., who was then thought to be Zena's father, M.K. assaulted respondent-mother by hitting her in the face and breaking a chain that was around her neck while he was holding Zena. At the time, M.K. was allegedly under the influence of an unknown substance and alcohol. Madison County law enforcement officers responded to a report of a domestic violence incident. One of the officers stated that "a female ran out [of the home] and stated that [M.K.] was inside holding [Zena] like 'a hostage situation,' " and respondent-mother claimed that M.K. had "body-slammed her." Officers observed M.K. acting aggressively and issuing threats and took him into custody. Officers stated that they were familiar with M.K. due to prior incidents of domestic violence and alcohol consumption, and they claimed he was a violent and reckless person and dangerous for Zena to be around. Respondent-mother agreed to enter into a safety plan which included seeking a restraining order against M.K. and pursuing custody of Zena. Respondent-mother initiated proceedings to obtain a domestic violence protective order against M.K., but the matter was discontinued after she failed to appear in court.

On 9 September 2017, DHHS received another CPS report. This report alleged that Zena's maternal grandmother was locked in her bedroom because respondent-mother was acting aggressively and that the maternal grandmother was afraid of respondent-mother. Respondent-mother was banging on the maternal grandmother's door, and Zena was left in the living room unsupervised. Upon investigation of the report, DHHS learned that respondent-mother was involuntarily committed that day and also learned that respondent-mother had tested positive for methamphetamine, fentanyl, and marijuana. Zena was taken to the home of her maternal aunt, who found three baggies in Zena's diaper which appeared to contain drugs.

Zena was placed in a temporary placement on 10 September 2017, but two days later the placement family reported to DHHS that they could no longer provide care for Zena. On 12 September 2017, DHHS filed a juvenile petition alleging that Zena was a neglected and dependent juvenile. DHHS noted in the juvenile petition that respondent-mother had a lengthy CPS history with DHHS regarding her other children. DHHS obtained nonsecure custody of Zena and placed her in foster care.

Following a hearing held on 22 November 2017, Zena was adjudicated a neglected and dependent juvenile in an order entered on 10 January 2018. Respondent-mother was ordered to complete a substance abuse assessment and to follow all recommendations, obtain a comprehensive clinical assessment and follow all recommendations, continue to engage in individual counseling and follow all recommendations of her counselor, find and maintain safe and suitable housing, and

submit to random drug screens. The trial court further noted that M.K. had been excluded as Zena's father by DNA testing and ordered respondent-mother to identify a putative father. Respondent-mother was granted visitation with Zena. The trial court ordered that Zena remain in her current foster home placement.

On 9 February 2018, the trial court entered an initial permanency planning and review order. The trial court established a primary permanent plan of reunification with a secondary permanent plan of guardianship. In a subsequent permanency planning and review order, the trial court changed the primary permanent plan to adoption with a secondary permanent plan of reunification. In compliance with the trial court's adjudication and disposition order, respondent-mother identified a putative father, J.R., and the trial court ordered him to undergo DNA testing. J.R., however, never appeared before the trial court or responded to DHHS's inquiries.

Additionally, D.S., who was respondent-mother's husband when Zena was born, was named Zena's legal father. D.S. took a DNA test which excluded him as Zena's biological father, and he relinquished his parental rights on 26 April 2019. Since paternity was never established, Zena's biological father remained unknown throughout the case.

On 4 December 2018, DHHS filed a petition to terminate respondent-mother's parental rights on the grounds of neglect, willful failure to make reasonable progress, failure to pay support, and dependency. N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2019). On

3 October 2019, the trial court entered an order in which it determined that grounds existed to terminate respondent-mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (2), and (6) and further concluded that it was in Zena's best interests that respondent-mother's parental rights be terminated. Accordingly, the trial court terminated respondent-mother's parental rights and respondent-mother appealed.

Counsel for respondent-mother has filed a no-merit brief on his client's behalf under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. Counsel advised respondent-mother of her right to file *pro se* written arguments on her own behalf and provided her with the documents necessary to do so. Respondent-mother has not submitted written arguments to this Court.

We independently review issues identified by counsel in a no-merit brief filed pursuant to Rule 3.1(e). *In re L.E.M.*, 372 N.C. 396, 402, 831 S.E.2d 341, 345 (2019). Respondent-mother's counsel identified the issues that could arguably support an appeal in this case and also explained why, based on a careful review of the record, these issues lacked merit. The trial court's conclusion that there was past neglect and a probability of future neglect was well supported by evidence in the record, including respondent-mother's failure to complete most of the requirements of her case plan. Whether the respondent-mother's failure to comply with her case plan was willful is not relevant to establish this ground for termination. When determining whether a child is neglected, the circumstances and conditions surrounding the child

are what matters, not the fault or culpability of the parent. *See In re Montgomery,* 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984).

The other grounds found by the trial court to support termination of respondent-mother's parental rights are also supported by evidence in the record. Respondent-mother's failure to complete her case plan also supports the conclusion that she willfully left her child in foster care or a placement outside the home for over twelve months without making reasonable progress in correcting the circumstances that led to the removal of the child. *See In re B.S.D.S.,* 163 N.C. App. 540, 546, 594 S.E.2d 89, 93 (2004). Here, there was clear, cogent, and convincing evidence that respondent-mother failed to comply with substance abuse treatment and mental health treatment and to address domestic violence issues, all of which was sufficient to demonstrate her lack of reasonable progress. Finally, the trial court did not abuse its discretion by deciding that termination of respondent-mother's parental rights was in the child's best interests. N.C.G.S. § 7B-1110(a) (2019). All six factors required by the statute were examined by the trial court, and the findings were supported by evidence at the hearing.

Considering the entire record and reviewing the issues identified in the no-merit brief, we conclude that the 3 October 2019 order is supported by clear, cogent, and convincing evidence and is based on proper legal grounds. Accordingly, we affirm the trial court's order terminating respondent-mother's parental rights.

AFFIRMED.